In the Matter of the Accounting of GIOVANNI DEL DRAGO et al., as Executors of JOSEPHINE DEL DRAGO, Deceased.

GIOVANNI DEL DRAGO, Individually, et al., Appellants; BYRON CLARK, JR., as Executor, et al., Respondents.

Argued April 16, 1941; decided November 27, 1941.

*Henry Cohen, Ludwig M. Wilson* and *Robert W. Maloney* for appellants. Congress intended that its tax should fall upon the estate and hence upon the residue rather than upon specific legacies. (*Knowlton* v. *Moore,* 178 U. S. 41; *Matter of Sherman,* 179 App. Div. 497; 222 N. Y. 540; *Matter of Newton,* 74 Penn. Super. Ct. 361; *Matter of Vanderbilt,* 281 N. Y. 297; *Whitney* v. *State Tax Commission,* 309 U. S. 530; *Burnet* v. *Brooks,* 288 U. S. 378; *Louisville & Nashville R. R. Co.* v. *Mottley,* 219 U. S. 467; *New York Trust Co.* v. *Eisner,* 256 U. S. 345; *Matter of Hamlin,* 226 N. Y. 407; *Farmers L. & T. Co.* v. *Winthrop,* 238 N. Y. 488; *Plunkett* v. *Old Colony Trust Co.,* 233 Mass. 471; *Matter of Oakes,* 248 N. Y. 280.) The exclusive power of the state over inheritances is subordinate to the will of Congress as to the incidence of its tax. In truth, Congress pre-empted the field and excluded any state regulation on the question. (*Burnes Nat. Bank* v. *Duncan,* 265 U. S. 17; *Frick* v. *Pennsylvania,* 268 U. S. 473; *Fidelity & Deposit Co.* v. *Tafoya,* 270 U. S. 426; *Davis* v. *Corona Coal Co.,* 265 U. S. 219; *Santovincenzo* v. *Egan,* 284 U. S. 30; *Knowlton* v. *Moore,* 178 U. S. 41; *Snyder* v. *Bettman,* 190 U. S. 249; *Plummer* v. *Coler,* 178 U. S. 115; *Southern Ry. Co.* v. *Reid,* 222 U. S. 424; *N. Y. C. R. R. Co.* v. *Winfield,* 244 U. S. 147; *Pennsylvania R. R. Co.* v. *Pub. Serv. Comm.,* 250 U. S. 566.) The state is without power to disturb the uniform incidence of the federal tax even assuming that Congress was silent on the matter. (*Plunkett* v. *Old Colony Trust Co.,* 233 Mass. 471; *Unites States* v. *Snyder,* 149 U. S. 210; *Steward Machine Co.* v. *Davis,* 301 U. S. 548; *Knowlton* v. *Moore,* 178 U. S. 41; *United States* v. *Bennett,* 232 U. S. 299; *Stebbins* v. *Riley,* 268 U. S. 137; *Burnet* v. *Harmel,* 287 U. S. 103; *Lyeth* v. *Hoey,* 305 U. S. 188; *Flaherty*

v. *Hanson*, 215 U. S. 515; *Farmers & Mechanics' Nat. Bank* v. *Dearing*, 91 U. S. 29; *Easton* v. *Iowa*, 188 U. S. 220; *Kalb* v. *Feuerstein*, 308 U. S. 433; *Matter of Tarble*, 13 Wall. 397; *Graves* v. *New York ex rel. O' Keefe*, 306 U. S. 466; *Prigg* v. *Pennsylvania*, 16 Pet. 539; *Townsend* v. *Yeomans*, 301 U. S. 441.)

*Harold W. Hastings* and *Sydney A. Hellenbrand* for Harold W. Hastings, as special guardian for Francesco del Drago et al., infants. Congress intended that the federal estate tax shall fall upon the estate and not upon the legatees. (*Matter of Vanderbilt*, 281 N. Y. 297; *Farmers' L. & T. Co.* v. *Winthrop*, 238 N. Y. 488; *Edwards* v. *Slocum*, 264 U. S. 61; *Y. M. C. A.* v. *Davis*, 264 U. S. 47; *N. Y. Trust Co.* v. *Eisner*, 256 U. S. 345; *Knowlton* v. *Moore*, 178 U. S. 41; *Matter of Oakes*, 248 N. Y. 280; *Matter of Hamlin*, 226 N. Y. 407; *Plunkett* v. *Old Colony Trust Co.*, 233 Mass. 471; *Turner* v. *Cole*, 118 N. J. Eq. 497.) State statutes may not overrule or change federal legislation. (*Lake Shore & Michigan Ry. Co.* v. *Ohio*, 173 U. S. 285; *Hines* v. *Lowney*, 305 U. S. 85; *Erickson* v. *Macy*, 231 N. Y. 86; *C. & O. Ry. Co.* v. *Stapleton*, 279 U. S. 587; *New York C. R. R. Co.* v. *Winfield*, 244 U. S. 147; *Northern Pac. Ry. Co.* v. *Washington*, 222 U. S. 370; *Missouri Pacific R. R. Co.* v. *Porter*, 273 U. S. 341; *Oregon-Washington Co.* v. *Washington*, 270 U. S. 87; *Pennsylvania R. R. Co.* v. *Pub. Serv. Comm.*, 250 U. S. 566; *Burnet* v. *Harmel*, 287 U. S. 103.)

*Lawrason Riggs, Jr.*, special guardian, and *Enos Throop Geer* for Angela del Drago et al., respondents. Section 124 of the Decedent Estate Law (Cons. Laws, ch. 13) is not in conflict with the Constitution of the United States or with the Constitution of the State of New York. (*Y. M. C. A.* v. *Davis*, 264 U. S. 47; *Edwards* v. *Slocum*, 287 Fed. Rep. 651; 264 U. S. 61; *Hepburn* v. *Winthrop*, 83 Fed. Rep. [2d] 566; *Matter of Hamlin*, 226 N. Y. 407; *Matter of Oakes*, 248 N. Y. 280; *Matter of Ryle*, 170 Misc. Rep. 450; *Matter of Scott*, 274 N. Y. 538; *Matter of Vanderbilt*, 281

N. Y. 297; *Matter of Mayer*, 174 Misc. Rep. 917; *Matter of Mollenhauer*, 257 App. Div. 286; *Matter of Bull*, 175 Misc. Rep. 197; *Missouri, Kansas & Texas Ry. Co.* v. *Haber*, 169 U. S. 623.) Congress did not intend to fix an immutable incidence of the tax. (*Edwards* v. *Slocum*, 287 Fed. Rep. 651; 264 U. S. 61; *Hagood* v. *Doughton*, 195 N. C. 811; *United States* v. *Security-First Nat. Bank*, 30 Fed. Supp. 113; *Central Trust Co.* v. *Burrow*, 144 Kan. 79.) In the field of estates there can be no repugnancy between estate law and the Constitution of the United States or with a federal statute unless the repugnancy is clear and the two statutes cannot stand together. Here the federal and state statutes are wholly consistent. (*Matter of Davega City Radio* v. *State Labor Board*, 281 N. Y. 13; *Kelly* v. *Washington*, 302 U. S. 1; *Reid* v. *Colorado*, 187 U. S. 137; *Savage* v. *Jones*, 225 U. S. 501; *Sutton* v. *English*, 246 U. S. 199; *Vaughn* v. *Northrup*, 15 Pet. 1; *Magruder* v. *Drury*, 235 U. S. 106.)

*Littleton Fox* and *Anthony J. Caputo* for Byron Clark, Jr., as executor, respondent.

RIPPEY, J. Josephine del Drago died October 8, 1937, while a resident of New York State, leaving a last will and testament dated March 27, 1934, which was probated by the Surrogate of New York County, and Giovanni del Drago and Byron Clark, Jr., were appointed and thereupon qualified as executors of her estate. Upon an accounting by the executors to which all parties interested in the estate were parties, it appeared that, although no final determination has been made as to the amount of state and federal estate taxes properly assessable, the executors have already paid nearly $300,000 thereon out of the general assets of the estate. Before distribution to beneficiaries, the executors properly requested a determination of the question of whether the taxes so paid should be apportioned to, prorated among and deducted from the shares passing under the will to the several legatees and devisees or paid entirely from the remainder residuary estate.

The deceased left a substantial estate in the United States and also property in France and Italy which latter is not the subject-matter of this accounting or involved in the point to be decided. Following small specific legacies for various persons, the deceased left to her husband, Giovanni del Drago, who is domiciled in the United States, various articles of personal property and effects by the *sixth* clause of the will, the sum of $300,000 by the *seventh* clause and the life use of the residuary estate under the *ninth* clause of the will. By the *eighth* clause of the will, she left to her stepson, Marcel del Drago of Rome, Italy, the life use of $200,000 with remainder over, *per stirpes*, to his surviving children born in lawful wedlock and/or the children born in lawful wedlock of any such child of her stepson who should then be deceased. In the event that Marcel del Drago should leave no such children or such grandchildren surviving, the remainder was directed to pass to the children of Clemente del Drago, son of Luigi del Drago, a brother of her husband, born in lawful wedlock and/or to the children born in lawful wedlock of any deceased child or children. By the *ninth* clause of the will, the residue of the estate upon the death of her husband was to pass to the children born in lawful wedlock of Mario del Drago, the second son of Luigi del Drago, of Rome, Italy, and/or the children born in lawful wedlock of any such child who might then be deceased.

The will contains no direction as to how, by whom or out of what portion of her estate so devised and bequeathed the estate taxes should be paid. By objections and answer to the account, specific legatees and guardians for infant legatees have suitably put in issue the constitutionality of chapter 709 of the Laws of 1930 (Decedent Estate Law, § 124 [Cons. Laws, ch. 13]) and chapter 710 of the Laws of 1930 as amended (Tax Law, § 249-t [Cons. Laws, ch. 60]) in so far as such statutes or either of them provide for the imposition, assessment or apportionment of the federal estate tax or any portion thereof against their legacies or interests in the estate of deceased. It is alleged that those

acts of the New York State Legislature are violative of the provisions of article I, section 8, and article VI of the Constitution of the United States and of the Fourteenth Amendment thereto and in conflict with and in violation of the provisions of the Federal Estate Tax Law, being title III of the Revenue Acts of 1926 and 1932, as amended by the Revenue Acts of 1935, 1936 and 1938 as amended, and known as section 826 (b) of the United States Revenue Code (U. S. Code, tit. 26, § 826, par. [b]) and are consequently void. The Surrogate overruled the objections and ordered and adjudged that the executors apportion and prorate all estate taxes, whether federal or state, among the various persons who take under the will in accordance with state law. By direct appeal by Giovanni del Drago and Marcel del Drago from the final order of the Surrogate, the constitutional question is properly before this court. The question propounded which we consider is whether the State of New York may by statute regulate and determine the incidence of the federal estate taxes in the face of the uniformity, supremacy and due process clauses of the Federal Constitution and of a contrary congressional intent.

Article I of the Federal Constitution contains the uniformity clause and provides that " the Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises * * *; but all Duties, Imposts and Excises shall be uniform throughout the United States * * * " and " To make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers " (§ 8). Article VI contains the supremacy clause and reads in part: " This Constitution, and the Laws of the United States which shall be made in Pursuance thereof * * * shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." Section 1 of the Fourteenth Amendment to the Constitution provides, among other things, that " all persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States

and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Prior to the act of 1916, all federal acts imposing death duties made specific provision for the payment of the tax by the several legatees individually and severally out of their shares and not by the estate (1 U. S. Stat. 527, July 6, 1797; 12 U. S. Stat. 433, 485, 486, July, 1862; 13 U. S. Stat. 223, 285–291, June, 1864; 30 U. S. Stat. 448, 464–466, June, 1898, as amended by 31 U. S. Stat. 946 [1901]). They were emergency measures and made no provision for permanent excises. They provided for inheritance taxes and not estate taxes. A reading of the 1898 act would seem to indicate that the rate was based on the net estate but the individual legacies were taxed. The constitutionality of that scheme of death-duty taxation was sustained only by construction whereby it was held that the rate was fixed alone by the size of the legacy (*Knowlton* v. *Moore,* 178 U. S. 41). By 1916, forty-two states (including the State of New York) were imposing death duties upon individual beneficiaries of decedent's estates. In no case was such imposition an estate tax. They were all strictly inheritance taxes and so defined. Never before 1916, except as emergency measures, had the federal government invaded the field of inheritance taxation which the states considered their exclusive preserve. The proposal of Congress to tap that field for additional revenue met powerful opposition by the states with the result that political expediency and practical and constitutional considerations impelled Congress to abandon that idea and turn to a tax upon the net estate as a unit of taxation, a new and hitherto unused source of federal revenue, and leave the imposition of a tax upon the separate successions to the property of each legatee or distributee to the several states (Congressional Record, 64th Congress, vol. 53, pt. 11, particularly at p. 10657, and pt. 15, Appendix, pp.

1495, 1942; *Matter of Hamlin*, 226 N. Y. 407; *Matter of Sherman*, 179 App. Div. 497; affd., 222 N. Y. 540; *New York Trust Co.* v. *Eisner*, 256 U. S. 345, 348; *Y. M. C. A.* v. *Davis*, 264 U. S. 47, 50; *Edwards* v. *Slocum*, 264 U. S. 61, 63; Gleason & Otis on The Law of Inheritance Taxation [4th ed., 1925], pp. 7–19). The federal estate tax as then proposed and subsequently developed was fundamentally different from a state inheritance tax (*Knowlton* v. *Moore*, *supra*). The distinction is pointed out and the authorities reviewed in *Farmers Loan & Trust Co.* v. *Winthrop* (238 N. Y. 488) and in *Y. M. C. A.* v. *Davis* (*supra*) and needs no further elaboration or discussion here. The theory of the federal estate tax is that the transfers are part of the estate and the tax thereon must be paid by the executor before distribution without recourse to the beneficiary (*Farmers Loan & Trust Co.* v. *Winthrop, supra*). Congress decided that a net estate tax was the one that it could adopt for a permanent part of its tax system with greater political and constitutional safety by leaving estate share taxes (inheritance taxes) to the states and estate taxes to the federal government. Thus, it was found, there would be established a co-ordinate tax system with separate sources of revenue, theoretically and constitutionally at least, each supplementing the other without overlapping — a federal system which lent itself without friction to uniform application. It also was held that such a system was in the interest of equality and equity as between the states and the federal government and on the part of those who bore the burden of the tax.

Accordingly, by the provisions of the Revenue Act of September 8, 1916 (39 U. S. Stat. 777 *et seq.;* 6 U. S. Compiled Stat. 1916, ch. 10A, p. 7364, § 6336½a *et seq.*) the Congress imposed an " estate tax " as distinguished from an " inheritance tax " on estates of deceased persons and placed the burden of the tax upon the residuary estate rather than upon legacies (*Matter of Hamlin*, 226 N. Y. 407). In that act and in subsequent similarly worded acts including the act in effect at the death of Mrs. del Drago, it was provided

that the tax should be upon the net estate as found according to the provisions of the act, chargeable to and payable by the executor before distribution *without recourse to the beneficiaries*, that it was not a tax upon the shares which the legatees should take or upon the persons taking those shares and that it was a tax upon the transfer of the estate as a whole at the time of death and not a tax on the person's privilege of receiving property under the will. Leaving no doubt that it was the purpose and intent of Congress to exclude specific legatees, as such, from bearing any of the burden of the tax, the Revenue Act of 1916 (§ 208; 39 U. S. Stat. p. 779) contained a provision which has been carried forward by Congress in subsequent estate tax acts (*e. g.*, U. S. Code, tit. 26, § 826, par. [b]; 44 U. S. Stat. 79) that " if the tax or any part thereof is paid by, or collected out of that part of the estate passing to or in the possession of, any person other than the executor in his capacity as such, such person shall be entitled to reimbursement out of any part of the estate still undistributed or by a just and equitable contribution by the persons whose interest in the estate of the decedent would have been reduced if the tax had been paid before the distribution of the estate or whose interest is subject to equal or prior liability for the payment of taxes, debts, or other charges against the estate, it being the purpose and intent of this title that so far as is practicable and unless otherwise directed by the will of the decedent the tax shall be paid out of the estate before its distribution." The courts have uniformly refused to order proration or apportionment among legatees of the amount of the tax (*Matter of Hamlin, supra; Farmers Loan & Trust Co.* v. *Winthrop, supra; Matter of Oakes*, 248 N. Y. 280; *Plunkett* v. *Old Colony Trust Co.*, 233 Mass. 471; *Knowlton* v. *Moore, supra; Coolidge* v. *Long*, 282 U. S. 582; *Y. M. C. A.* v. *Davis, supra*).

Under articles 10 (L. 1909, ch. 62, as amd.), and 10-A (L. 1925, ch. 143, as amd.) the New York Legislature imposed inheritance taxes upon individual legacies. Under article 10-B (L. 1925, ch. 320) it was provided that the

state death tax was " imposed upon the transfer of the net estate " (§ 249-a). The executor of every estate was made personally liable for the tax (§ 249-g). The executor was required to make a return within two months after the decedent's death or within a like period after qualifying as executor (§ 249-d), was forbidden finally to account unless he should have produced a final receipt or a certified copy thereof showing the payment of any taxes due (§ 249-e), was authorized to sell so much of the property of the estate as would enable him to pay the tax in the same manner provided by law for payment of a decedent's debt, and the State Tax Commissioner was authorized to maintain an action against the executor personally to recover the tax (§ 249-g). If any part of the tax was paid out of a distributive share, the person entitled to that share was entitled to reimbursement and tax upon the legacies, as such, was effectively barred (§ 249-g). It was stated to be " the purpose and intent of this article that so far as is practicable and unless otherwise directed by the will of the decedent the tax shall be paid out of the estate before its distribution." (§ 249-g.) Thus state death duties for purposes of state revenue were assessable and collectible and the burden imposed in the same manner as the federal estate tax. In each sovereignty, the applicable statutes required the tax to be deducted and paid from the net estate before determination and computation of the shares payable to individual legatees.

After much agitation and effort in and out of the Legislature, a new state tax law applicable to estates of persons dying after September 1, 1930, was passed by the Legislature and became effective on that date (L. 1930, ch. 710, amdg. L. 1909, ch. 62, by adding a new article to be known as 10-C). By the provisions of the act itself, history of inheritance tax legislation of the state and proceedings antecedent to its passage, it was clearly shown that the act was passed for the purpose (1) of imposing death duties upon those who received the benefit and not upon the estate of the deceased and (2) to compel similar distribution of the

federal estate tax notwithstanding and in the face of the federal law to the contrary (McKinney's historical note, vol. 13, p. 420). The act required that the tax be apportioned among the beneficiaries and the order of reimbursement of the previous act was reversed. It was provided that the executor should pay the tax out of the net estate, should not make reimbursement to legatees but that he was entitled to contribution from them. It was provided that in respect to persons dying after September 1, 1930, that article should supersede any article of the Tax Law " which imposes a transfer, inheritance or estate tax " (§ 249-mm) and that no exemption provided for in any other article of the Tax Law or of any other law of the state should be construed as being applicable under the new article. The act contains in itself no provision for apportionment and distribution of the tax among the legatees or distributees. In the face of probable necessary construction and possible unconstitutionality (*Knowlton* v. *Moore, supra*), other provisions were added (§ 249-t) and the Decedent Estate Law was amended (§ 124; L. 1930, ch. 709, effective September 1, 1930), whereby the rate of the tax is fixed by the amount of the estate and the tax found due is apportioned among the various legatees according to that rate. Section 249-t of the Tax Law provides for exclusive jurisdiction in the Surrogate's Court " to finally determine the amount of the tax imposed by this article, and to fix and adjudge the proportions in which the same shall be borne by the persons interested in the estate as in section one hundred twenty-four of the decedent estate law provided." (§ 249-kk). Section 124 of the Decedent Estate Law provides that the death tax imposed shall " so far as is practicable and unless otherwise directed by the will of the decedent * * * be paid by the executor as such out of the estate before its distribution," and the executor shall not be required to distribute under the will any property with respect to which federal or state estate tax is imposed unless the amount thereof is apportioned to the distributees and such taxes are paid. Subdivision 1 of the

section provides a scheme for apportionment and distribution and leaves it in the hands of the Surrogate equitably to carry that scheme into effect as far as the state tax is concerned. But it does not stop there. It further provides that the estate tax paid by an executor " under the provisions of the United States revenue act of nineteen hundred twenty-six, as amended by the United States revenue act of nineteen hundred twenty-eight, or under any death tax law of the United States hereafter enacted, upon or with respect to any property required to be included in the gross estate of a decedent under the provisions of any such law, the amount of the tax so paid, except in a case where a testator otherwise directs in his will, [with an exception (L. 1940, ch. 829, § 13) not here pertinent] shall be equitably prorated among the persons interested in the estate to whom such property is or may be transferred or to whom any benefit accrues," and makes it mandatory on the executor, as to any property that does not come into his hands, " to recover from whomever is in possession, or from the persons interested in the estate, the proportionate amount of such tax payable by the persons interested in the estate with which such persons interested in the estate are chargeable under the provisions of this section, and the surrogate may by order direct the payment of such amount of tax by such persons to the executor."

The Federal Revenue Act of 1918, in essential respects similar to the act of 1916 so far as the point at issue is concerned, was held in *Y. M. C. A.* v. *Davis* (*supra*, p. 50) to be " an excise upon the transfer of an estate upon death of the owner " and " not a tax upon succession and receipt of benefits under the law or the will. It was death duties as distinguished from a legacy or succession tax. What this law taxes is not the interest to which the legatees and devisees succeeded on death, but the interest which ceased by reason of the death." So far as material, identical provisions are contained in the Federal Estate Tax Law applicable to the estate under consideration. Similar provisions to those contained in the 1916 act were construed

as above in *Matter of Oakes* (248 N. Y. 280) and the act was held constitutional in *New York Trust Co.* v. *Eisner* (*supra*) on the basis of such a construction since the federal tax was an excise upon the right of transmission of the whole estate applicable from its beginning to final distribution of the estate. The federal policy to control the incidence of the estate tax is clearly established and declared not only in the law itself but by our own decisions (*Hamlin, Oakes* and *Winthrop* cases) .and by necessary implication (*Matter of Neagle*, 39 Fed. Rep. 833). It was definitely established for uniform application in 1916 long prior to the policy-fixing tax statutes of the State of New York in 1930.

" It is a principle firmly established that to the law of the State in which the land is situated we must look for the rules which govern its descent, alienation and transfer, and for the effect and construction of wills and other conveyances " (*DeVaughn* v. *Hutchinson*, 165 U. S. 566, 570). Nevertheless, every sovereignty, whether state or federal, possesses the power of regulating the manner and terms upon which property, both real and personal, within its dominion may be transmitted by will and of prescribing who shall and who shall not be capable of taking it (11 Am. Juris., Conflict of Laws, § 169; *Mager* v. *Grima*, 8 How. [U. S.] 490; *United States* v. *Perkins*, 163 U. S. 625; *Blythe* v. *Hinckley*, 180 U. S. 333; *Nielsen* v. *Johnson*, 279 U. S. 47; *Snyder* v. *Bettman*, 190 U. S. 249, 252; *Santovincenzo* v. *Egan*, 284 U. S. 30, 40; *Knowlton* v. *Moore, supra; Johnson* v. *Olson*, 92 Kan. 819; L. R. A. 1915E, 327 and note; *Rixner's Succession*, 48 La. Ann. 552; 32 L. R. A. 177; *Easton* v. *Huott*, 95 Iowa, 473; 31 L. R. A. 177). Under all sorts of conditions, control over the right to hold and over the use, devolution and transmission of real and personal property of citizens within the United States has been exercised by Congress under the Constitution. It is a subject so broad that time and space and lack of importance to the present decision forbid extensive and detailed references. The right to impose an estate tax and to regulate

and control its incidence or to determine the right to take by will is not exclusive to the state (See cases *supra; Murdock* v. *Ward,* 178 U. S. 139; *Knowlton* v. *Moore, supra; Snyder* v. *Bettman, supra; New York Trust Co.* v. *Eisner, supra; Burnet* v. *Brooks,* 288 U. S. 378; *Matter of Hamlin, supra*) and that conclusion is not in any manner affected by the dicta in *Edwards* v. *Slocum* (287 Fed. Rep. 651) or by the misconstruction and misapplication of the reference to the lack of concern of the United States in the incidence of the federal estate tax in the *Eisner* case or in other state cases of similar import. The state has not, as it has been loosely said, exclusive power, as against the federal government, to say who and in what proportions recipients of a testator's bounty or distributees of an intestate's estate shall take of either the gross or net estate. In *Knowlton* v. *Moore* (*supra*) the theory that the state may impose regulations as to the incidence of the federal estate tax to the exclusion of the right of Congress finally to fix the incidence of that tax because the state has the right to regulate successions was exploded.

The state's right to taxation is subordinate to that of the federal government and when the latter has acted in a particular field, the full import and all the implications of that act must control. The Congress has not only acted in the field of decedents' estate taxation to levy and collect duties but has expressly directed the manner of payment of such duties and excluded specific legatees from bearing the burden of any such levy. Such exclusion was final and conclusive and beyond the power of the state to vary or change. But if it be urged that failure of Congress to be more specific as to its purpose to exercise complete control of the incidence of the estate tax to the exclusion of state interference indicates an intent that the state might legislate on the subject, the answer is that silence does not give consent but implies only that there shall be no interference with the federal scheme (*Prigg* v. *Pennsylvania,* 16 Pet. [U. S.] 539; *United States* v. *Snyder,* 149 U. S. 210; *W. U. Tel. Co.* v. *Boegli,* 251 U. S. 315; *Hines*

v. *Lowrey*, 305 U. S. 85, 91; *Graves* v. *New York ex rel. O' Keefe*, 306 U. S. 466; *Erickson* v. *Macy*, 231 N. Y. 86, 91). In *Prigg* v. *Pennsylvania* it was urged that Congress had the exclusive power of legislation upon the subject-matter under consideration under the provisions of the Constitution of the United States, that if that power was not exclusive in Congress, still the concurrent power of the State Legislature was suspended by the actual exercise of the power of Congress and that if not suspended still the statute of Pennsylvania in all its provisions applicable to that case was in direct collision with the act of Congress and, therefore, unconstitutional and void. It appeared in that case that Congress had legislated upon the subject-matter in controversy. Thereupon the court said: " For, if Congress have a constitutional power to regulate a particular subject, and they do actually regulate it in a given manner, and in a certain form, it cannot be that the State Legislatures have a right to interfere, and, as it were, by way of complement to the legislation of Congress, to prescribe additional regulations, and what they may deem auxiliary provisions for the same purpose. In such a case, the legislation of Congress, in what it does prescribe, manifestly indicates, that it does not intend that there shall be any farther legislation to act upon the subject-matter. Its silence as to what it does not do, is as expressive of what its intention is as the direct provisions made by it. This doctrine was fully recognized by this court, in the case of *Houston* v. *Moore*, 5 Wheat. [U. S.] 1, 21, 22; where it was expressly held, that where Congress have exercised a power over a particular subject given them by the Constitution, it is not competent for State legislation to add to the provisions of Congress upon that subject; for that the will of Congress upon the whole subject is as clearly established by what it had not declared, as by what it has expressed " (p. 617). In *United States* v. *Snyder* the court had under consideration the question of the right of the states under reserve power to interfere with the collection of a tax imposed by Congress. The court said: " The 8th section of

the 1st article declares that ' the Congress shall have power to lay and collect taxes, duties, imposts and excises, * * * but all duties, imposts and excises shall be uniform throughout the United States.' The power to impose and collect the public burthens is here given in terms as absolute as the language affords. The provision exacting uniformity throughout the United States itself imports a system of assessment and collection under the exclusive control of the general government. And both the grant of the power and its limitation are wholly inconsistent with the proposition that the States can by legislation interfere with the assessment of Federal taxes, or set up a limitation of time within which they must be collected " (p. 214).

Since Congress had the power to lay and collect taxes on decedents' estates and determine where the burden should rest (*New York Trust Co.* v. *Eisner, supra*), those acts are the supreme law of the land and the state legislative acts in question, if in conflict with the federal law, are a nullity though enacted in the exercise of concurrent and not controverted powers (*Gibbons* v. *Ogden*, 9 Wheat. [U. S.] 1, 24, 211; *Florida* v. *Mellon*, 273 U. S. 12, 17). That the federal and state statutes are in conflict on the question of where the burden of the federal tax shall fall is beyond doubt. The federal acts place the incidence of the tax upon the net residuary estate payable by the executor before distribution *without recourse to the individual legatees;* the state acts, though requiring the executor to pay, impose the burden of the federal estate tax upon the specific legatees and require the executor to deduct the *pro rata* burden from each legacy or collect such share or the part thereof he has paid from such legacy. So far as federal excises are concerned, the burden may not be regulated, distributed or apportioned by the state. Distribution must be accomplished under the federal law within the field within which Congress purports to act and has acted consistently and continually since long prior to 1930 when the state acts under attack went into effect. Repugnancy of the state acts to the federal acts render the former inoperative in so

far as they purport to regulate the incidence of the federal estate tax and authorize and direct its distribution and apportionment. It is quite clear also that there can be no uniform operation of the federal estate act if each state is to determine for itself how distribution and apportionment of the tax shall be made.

In neither of the cases relied upon, in part at least, by the learned Surrogate (*Matter of Scott,* 274 N. Y. 538; certiorari denied, 302 U. S. 721; *Edwards* v. *Slocum,* 287 Fed. Rep. 651; affd., 264 U. S. 61, and *Y. M. C. A.* v. *Davis,* 264 U. S. 47) was the question here presented raised or decided or a determination thereof necessary for the decision. The only satisfaction that respondents may derive from those cases is eked out of isolated sentences from the opinions which are pure dicta. In the *Scott* case the deceased left various life insurance policies with benefits payable periodically to beneficiaries named in the policies and the questions propounded and decided were whether (1) the benefits were included in the gross estate of deceased and fell within the intendment of section 124 of the Decedent Estate Law and (2) whether, if applicable, the section was repugnant to due process and involved unconstitutional impairment of the obligation of contracts. The only questions involved in the *Edwards* case were the power of the federal government to impose an estate tax upon the gross net estate of a deceased where a part passed to charity and the scope of the Federal Estate Tax Law as to the imposition of such a tax. In the *Davis* case (p. 48), arising in Ohio, the question was what effect payment by an executor of the federal estate tax should " have in the distribution of the estate among the legatees and beneficiaries under the will " under the provisions, properly construed, of the applicable Federal Estate Tax Law.

The question of the justice or equity of placing the burden upon the residuary estate is entirely irrelevant to the question under consideration. Whether it is just and equitable in all cases to impose the tax upon the estate as a whole and not upon the specific legatees on the benefits they

derive from the estate is a matter admitting of wide diversity of opinion. It is not the province of the courts to resolve that conflict. " The Congress has spoken and it is our function to interpret, not to legislate " (*Matter of Hamlin*, 226 N. Y. 407, 420; certiorari denied, 250 U. S. 672; *Farmers' Loan & Trust Co.* v. *Winthrop*, 238 N. Y. 488, 496, 497; certiorari denied, 266 U. S. 633; *Matter of Vanderbilt*, 281 N. Y. 297; affd., 309 U. S. 530). Deceased knew the law when she made her will, and then knew that in the absence of directions to the contrary in the will all federal estate taxes would be payable out of her residuary estate and that her net estate, after deduction of the federal tax, would alone be available for distribution to legatees and she thereby took into account any alleged inequities that might result in its application (*New York Trust Co.* v. *Eisner, supra; Matter of Vanderbilt, supra*). In making her will she had a right to rely upon the federal law as the only law fixing the burden of the federal estate taxes. It is not our province to remake the will and to have it provide as her wish and intent that such taxes should be apportioned and prorated among the various specific legatees.

It follows that in so far as section 124 of the Decedent Estate Law or section 249-t of article 10-C of the State Tax Law authorize, require or direct distribution and apportionment of the federal estate taxes levied and to be levied upon the estate of the deceased among the legatees, they are repugnant to the provisions of the Federal Estate Tax Act of 1926 and amendments thereto, the Congress being competent to legislate on the subject of estate excises, and to the uniformity and supremacy clauses of the Federal Constitution and are, therefore, unconstitutional. Since what we have said above is decisive of the issue here involved, it is unnecessary to consider other grounds of unconstitutionality which appellants urge. The question of the repugnancy of the legislative acts to the New York State Constitution is not before us on this record and nothing said above is to be considered an expression of opinion on that subject.

The order of the Surrogate's Court should be reversed, with costs in this court and in the Surrogate's Court to each party appearing and filing a separate brief payable out of the estate and the matter remitted to the Surrogate's Court to proceed in accordance with this opinion.

DESMOND, J. (dissenting). The appellants are general legatees under the will of Josephine del Drago. Over their objection the Surrogate, in this accounting proceeding, prorated the federal estate tax equitably "among the persons interested in the estate" and ordered the executor to charge the prorated amounts against the persons so interested, including appellants. All this was in obedience to the command of section 124 of the Decedent Estate Law, applicable to this estate, since testatrix did not direct otherwise in her will. In this court there is raised by appellants only one objection to this prorating and apportionment, namely, that section 124, in so far as it directs such prorating and apportionment, is invalid as being in conflict with the "Supremacy Clause" of the Federal Constitution (Art. VI, cl. 2).

The estate of Josephine del Drago became subject at her death to a tax imposed by the United States on the estates of decedents. No one questions that the tax so imposed is a true estate tax, falling on the estate itself and payable from the estate, and is not an inheritance tax which falls on the separate shares of the estate which go to the several beneficiaries. It is an excise tax laid upon the privilege of transmitting property rights at death. (*Matter of Vanderbilt*, 281 N. Y. 297, 311, 315.) To make this entirely clear, Congress provided (U. S. Code, tit. 26, § 826, par. [b]) that "so far as is practicable and unless otherwise directed by the will of the decedent the tax shall be paid out of the estate before its distribution." Congress never directed that the tax was to be paid out of the residuary estate and it "is not a tax upon a residue." (*Edwards* v. *Slocum*, 264 U. S. 61, 62.) Nor did Congress ever attempt to forbid the local probate courts to fix the

final incidence of the tax by apportioning its burden among the several beneficiaries, after the executor has paid it. Indeed, there is much evidence from various sources that Congress was not at all concerned about this matter of final incidence and that its only intent was to set up a simple system whereby there should be taken out of sizable estates, before any distribution was had in those estates, a sum fixed by the federal statute. Congressman Kitchin, Chairman of the House Ways and Means Committee, said on the floor of the House in answer to a question: "We levy the tax on the transfer of the flat or whole net estate. We do not follow the beneficiaries and see how much this one gets and that one gets, and what rate should be levied on lineal and what on collateral relations, but we simply levy on the net estate. This also prevents the Federal Government, through the Treasury Department, going into the courts contesting and construing wills and statutes of distribution" (Congressional Record, 64th Congress [1916], pt. 15, p. 1942). The Senate Committee on Finance adopted this language in its own report on the bill (quoted in *Matter of Hamlin*, 226 N. Y. 407, at pp. 415, 416). The federal statute was, therefore, so drawn as not to control or determine the final incidence of the tax. As Circuit Judge HOUGH said in *Edwards* v. *Slocum* (287 Fed. Rep. 651, 653): "So far as the words of the statute are concerned, the United States does not care who ultimately bear the weight of this tax; it announces the sum and demands payment from the executors; if the legatees and devisees cannot agree as to the burden bearing, the state courts can settle the matter."

In affirming the decision of the Circuit Court of Appeals in *Edwards* v. *Slocum*, the Supreme Court (264 U. S. 61, 63) gave at least seeming approval to the position taken by the Attorney-General that "the distribution of the burden of taxation among the several beneficiaries is a matter of state regulation." On the same day, February 18, 1924, the Supreme Court announced its decision in *Y. M. C. A.* v. *Davis* (264 U. S. 47). There, in discussing the effect on charities, ordinarily exempt from federal taxation of the

deduction of this federal estate tax from the residue in which the charities took a share, the Supreme Court held that the charities were not exempted from the final burden of the tax despite the fact that the statute in computing the net estate, deducted amounts bequeathed to charities. Comparing the situation of the charities with that of a beneficiary who might take under a will the first $50,000 of an estate (this first $50,000 being at that time similarly exempted in computing the net estate) the Supreme Court remarked that the legatee who took that $50,000 might ultimately have to stand his share of the Federal estate tax, "if by the law of the state, such should be its incidence" (p. 51).

We need not take time for a careful inquiry as to whether or not these expressions in the federal decisions are dicta. Dicta or not, binding on us or not, they cannot be ignored, particularly when they have been so long regarded as stating the law, and when they agree with the expressed views of the members of Congress and with the logic of the situation. Why should Congress concern itself as to the ultimate resting place of this tax? Having seen to it that the federal government's toll shall always be taken before the beneficiaries divide up the estate, having commanded the executor to pay the tax before the distribution begins, and having provided adequate penalties for his failure so to do, what matters it to Congress how local law afterwards apportions the tax among the legatees or devisees? Long before the turn of the legatees and devisees comes, the United States Collector of Internal Revenue has gotten the government's tax money and closed the books on the estate. Thus in no real or reasonable sense can it be said that a later apportionment interferes with the enforcement of the Federal Tax Law, or modifies or changes that tax.

Early in the history of the federal statute, and before New York State had an apportionment statute, this court held that the executor was bound to charge the whole federal tax to the residue, as the state law then stood. (*Matter of Hamlin*, 226 N. Y. 407; certiorari denied, 250

U. S. 672.) This decision does not rest on any federal statute directing that the tax be charged finally, or in the first instance, upon the residue, for there is no such statute. The federal statute says only that the tax " shall be imposed upon the transfer of the net estate " (U. S. Code, tit. 26, § 810) and that " so far as is practicable and unless otherwise directed by the will of the decedent the tax shall be paid out of the estate before its distribution " (U. S. Code, tit. 26, § 826). From these statutory provisions directing the executor to pay the tax to the Collector out of the net estate before distributing it, it follows mathematically, in most estates, that the original source of payment is the residue of the estate. It is quite a long jump from that interpretation of the " net estate " provision in the federal statute, to the position, here taken by appellants, that the statute somehow amounts to a prohibition against any prorating of the tax by a state among beneficiaries after it has been paid to the United States out of the residue.

Even without a state prorating statute, there are cases where, mathematically, the tax cannot be paid out of the residue, but must be charged immediately on the several bequests or devises. Suppose a case where there is no residue, as where the general legacies equal or exceed the actual net estate. In such a case the executor, paying the federal tax from the " net estate," is in fact deducting it from the amount available for the general legacies. Would he then not have to prorate it against those legacies, whether or not any statute so directed?

The *Hamlin* case (*supra*) and the later cases of *Farmers' Loan & Trust Co.* v. *Winthrop* (238 N. Y. 488) and *Matter of Oakes* (248 N. Y. 280) held, we have seen, that under the statutes as they then stood the tax was ordinarily a charge upon the residue, " primarily at least " (*Oakes* opinion at p. 282). The resulting situation had its difficulties. The New York State Commission to Report Defects in the Law of Estates, which included among its members some of the recognized experts in the field, reported as follows in 1930: " Experience has demonstrated that in most estates the residuary legatees are the widow, children, or nearer and

more dependent relatives. This has been one of the objections to the Federal Estate Tax Law in New York. The burden of the tax has been imposed upon the residuary legatees not only as to the property passing under the will, but also upon transfers whether by gift or *inter vivos* trust, or other form of transfer taking effect at death. These transfers are included in both the Federal Estate Tax Law and under the proposed New York State Estate Tax Law as subject to taxation. Thus the residuary legatees have been compelled to pay the entire estate tax, including the tax assessed on testamentary transfers and those taking effect at death." (Combined Reports of Commission to Investigate Defects in Laws of Estates [1928–1933], Reprint ed., p. 338.) The Commission then proposed what is now section 124 of the Decedent Estate Law, to provide statutory authority for the equitable apportionment of the estate taxes, both federal and state, citing as authority for the legality of such an apportionment statute, *Edwards* v. *Slocum* (*supra*).

Section 124, so proposed, was enacted by the Legislature and became effective in 1930. At least one other state, Pennsylvania, has a similar prorating statute (Pennsylvania Stat. Annotated [Purdon], tit. 20, § 844), passed in 1937. So far as appears, no court, state or federal, has ever held that a state is without power to pass such an act. The constitutionality of section 124 as against other claims of invalidity was upheld by this court in *Matter of Scott* (274 N. Y. 538; certiorari denied, 302 U. S. 721). In that case there was not advanced at all the theory of unconstitutionality for which appellants here contend, *i. e.*, that section 124 is in conflict with the so-called Supremacy Clause of the United States Constitution (Art. VI, cl. 2).

We do not find here any such interference by the t with the federal taxing power, or any attempt by state statute to assert supremacy. We see no possih conflict between the command of the federal estate ta statute that, unless otherwise directed by the will, the tal be paid out of the net estate and the provision of section 124 that, unless otherwise directed by the will, the tax be

apportioned. We have shown, above, that the interest and activity of the United States ceases when the executor has paid the tax, that the federal statute not only does not make the tax a non-transferable charge on the residue, but does not command payment from the residue at all. How then can there be any conflict? Surely appellants are not claiming that the field of estate taxation is one altogether sacred to the federal power, or that it is one of those fields from which the states are excluded, once Congress has entered in. Both the national and the state governments have power to impose such taxes (*Snyder* v. *Bettman*, 190 U. S. 249). The power of Congress so to legislate is not superior to that of the State Legislatures: " * * * in considering the power of Congress to impose death duties, we eliminate all thought of a greater privilege to do so than exists as to any other form of taxation, as the right to regulate successions is vested in the States, and not in Congress " (*Knowlton* v. *Moore*, 178 U. S. 41, 58). Having in fullest measure the power of " regulating the manner and term upon which property real or personal within its dominion may be transmitted by last will and testament, or by inheritance " (*Mager* v. *Grima*, 8 How. [U. S.] 490, 493), a state, it would seem, may enact any reasonable measure to control such transmittal at death, by the levying or apportionment of taxes. So complete is the state's power in this respect that it may impose such a tax on the United States of America itself, when the United States is a legatee (*United States* v. *Perkins*, 163 U. S. 625, 627) and may tax an estate or a legacy consisting entirely of United States bonds, although the bonds were issued under a federal statute declaring them to be exempt from state taxation in any form (*Plummer* v. *Coler*, 178 U. S. 115). Our conclusion that the Congress has not attempted to restrain the states from fixing the final incidence of this federal estate tax, is strengthened by the authorities just cited which go far toward holding that such an attempted restraint by the Congress on the states would be an invasion of the state's power to regulate the manner and term of transmitting property by will or inheritance.

Finally, there is a strong presumption in favor of a state statute, that it conforms to, and does not conflict with, the Federal Constitution. " Doubts on this point are to be resolved in favor of, and not against, the State " (*Corporation Commission* v. *Lowe*, 281 U. S. 431, 438). Practical considerations impel us to the same result. Why should we strain to hold this statute unconstitutional, when in so holding, we produce a result which the testatrix plainly did not intend? The will here, carefully drawn and disposing of a large estate, was made in 1934, four years after section 124 went into effect. Testatrix and her advisers are presumed to have known and must have known that, by the terms of section 124, she could, by inserting a few words in her will, forbid apportionment of the estate taxes and command their payment from the residue. She chose not to do so. We should not do it for her.

The order of the Surrogate should be affirmed, with costs against appellants.

FINCH, LEWIS and CONWAY, JJ., concur with RIPPEY, J.; DESMOND, J., dissents in opinion in which LEHMAN, Ch. J., and LOUGHRAN, J., concur.

Order reversed, etc. (See 287 N. Y. 764.)