Argued September 9, reversed and remanded December 11, 1963,
petition for rehearing denied March 10, 1964

# BEATTY *v.* CAKE ET AL

387 P. 2d 355
390 P. 2d 176

 

*William C. Martin,* Portland, argued the cause for appellant. On the brief were Dusenbery, Martin, Beatty & Parks, Verne Dusenbery and David P. Templeton, Portland.

*William Love,* Portland, argued the cause for respondents. With him on the brief were Cake, Jaureguy, Hardy, Buttler & McEwan, and John R. Faust, Jr., Portland.

Before MCALLISTER, Chief Justice, and ROSSMAN, PERRY, SLOAN, O'CONNELL, GOODWIN and LUSK, Justices.

SLOAN, J.

Plaintiff is the administrator of the Oregon assets of the estate of Nathaniel E. Berry, deceased. In 1953, Berry created an inter vivos trust for the benefit of the employes of Equitable Savings & Loan Association, subject to certain benefits to be paid to Berry during his lifetime. The corpus of the trust was real property, of substantial value, situate in Klamath Falls. Defendants are the present trustees of the trust estate. Originally there was one trustee. In 1956, Berry died intestate. His domicile at the time of his death was in the state of Washington. The value of the inter vivos trust estate was added to his gross estate for federal tax purposes. The total federal estate tax was paid by the administrator of his estate. This action was filed to recover from defendant trustees the additional tax attributable to the enhanced value of the gross estate by the inclusion therein of the value of this trust estate. The trial court denied recovery, plaintiff appeals.

There are two issues of decisive importance presented by this appeal. It is necessary to first decide a conflict of law question and, secondarily, shall the doctrine of equitable apportionment be adopted for cases of this kind.

The original trust was created by deeds of trust. The deeds were executed by Mr. Berry and Gerda Berry, the common owners of the real property. The terms of the deeds of trust were augmented by a supplemental agreement executed by the donors and the trustee in 1955. The provisions of this supplemental agreement with respect to the payment of taxes, other than gift taxes, are inconclusive. Nor do we find in any of the trust documents any other evidence of the intent of the donors, express or implied, which could guide us to decision. The documents being absent of any showing of intent, plaintiff urges that we adopt the doctrine of equitable apportionment. The application of the concept of equitable apportionment, as it is identified and explained in cases later to be cited, would require defendant trustees to reimburse plaintiff for the enhanced federal estate tax plaintiff was obliged to pay. It is necessary, however, that we resolve the conflict of law issue before we reach the problem of apportionment.

The conflict is created by these facts: The donor, Mr. Berry, whose estate is involved, was domiciled at his death in the state of Washington. His estate was subject to probate in Washington. It is conceded that Washington has refused to adopt the apportionment rule. *Seattle-First Nat. Bk. v. Macomber*, 1949, 32 Wash2d 696, 203 P2d 1078. For obvious reasons defendants urge that we follow the law of the domicile.

On the other side of the conflict we have a trust agreement executed in Oregon; the trust estate is im-

movable property situate in this state. The trustees and, we assume, most of the beneficiaries are residents of Oregon. Although the trial court held that *O'Donnell et al v. Scott,* 1945, 176 Or 500, 159 P2d 198, ruled against the apportionment of federal estate taxes, we are of the opinion that the question was not considered in that case and is, therefore, an open one in this court. Thus, it becomes necessary to decide if the law of the domicile or that of the situs of the trust and the trust property should apply. And we have no controlling precedent by this court in respect to this kind of a conflict.

■ As a preface or introduction to the problem reference should be made to Scoles, Apportionment of Federal Estate Taxes and Conflict of Laws, 1955, 55 Col L Rev 261. It is the most comprehensive exposition of the subject that can be found. Although we do not follow the solution to the problem suggested by Professor Scoles, any discussion of the issue would be incomplete without mention of this article. More specific reference will be made later.

The contending case authority on this conflict is exemplified in New York and Massachusetts decisions. The leading cases in New York are: *In re Gato's Estate,* 1950, 276 App Div 651, 97 NYS2d 171, 301 NY 657, 93 NE 2d 924; *In re Abry's Trust,* 1961, 214 NYS2d 555, and *In re Peabody's Estate,* Sup Ct. 1952, 115 NYS2d 337. These New York cases hold that the law of the domicile shall control. The Supreme Judicial Court of Massachusetts emphatically holds to the contrary. *Issacson v. Boston Safe Deposit & Trust Co.,* 1950, 325 Mass 469, 91 NE2d 334. The Massachusetts court voices this criticism of the New York decisions:

"We are aware that in certain lower courts of New York to whose views, because of their intrinsic

> soundness, we often give respectful attention, a doctrine seems to have been evolved under which it is or has been held that the apportionment statutes of the State of residence of a decedent will be applied in other States.* However, we have seen no case in which the reasons for this doctrine have been discussed or its foundations examined. So far as we have seen it rests upon nothing more satisfactory than repeated assertion. * * *." 325 Mass 473, 474. (Footnote omitted).

We agree.

Reference to the authorities in regard to the more usual conflicts in respect to the validity of a trust, or in regard to the interpretation of a trust document, or as to the administration thereof are uniformly governed by the law of the situs. This is particularly true in a trust of immovables. Leflar, The Law of Conflict of Laws, 1959, Chapter 24; Scott, What Law Governs Trusts?, 1960, 99 Trusts & Estates, 186. Ehrenzweig, in Chapter Seven, of his work on Conflict of Laws, 1962, voices some criticism of this more traditional rule but recognizes that it is virtually axiomatic. In the previously cited article by Scoles he also declares:

> "The rule that the law of the domicile controls apportionment against inter vivos trusts is inconsistent with the traditional rules controlling other matters relating to inter vivos trusts of either personalty or realty." 55 Col Law Rev. 281.

However, Professor Scoles is an advocate of applying the law of the domicile to these cases. He believes that it will favor uniform treatment of the estate. He also appears to believe that apportionment would, therefore, be more likely to be required. However, he would follow the New York decisions, regardless of the apportionment result. We are not persuaded that these

results would necessarily follow if we should, in all cases, apply the law of domicile.

The authorities last cited would lead to the conclusion that any other problem which might arise in respect to this trust would be governed by Oregon law. The fortuitous circumstance of the place of the donor's death, whereby domicile may be fixed, would not seem to be the dominant consideration to determine the choice of law to apply to the problems involving a trust estate of the character now before us. For example, the evidence discloses that Mr. Berry died while in Peru. If, by chance, his domicile had been established there, would the rule defendants advocate require that we apply the law of that nation? We think, rather, that there is greater significance to be attached to the state wherein the trust property and the administration thereof is to be found.

The interesting case of *The Attorney-General v. The Jewish Colonization Association,* 1900, 1 Queen's Bench 123 (CA), involved a trust of several million pounds for the benefit of Jewish refugees. The donor was a resident of Austria. The trust instrument was executed in England and administered by English trustees. The property was largely stocks and bonds of continental banks, held by the trustees. The opinions of the judges, in part rely on evidence of the donor's intent as a basis for deciding a conflicts question. But the opinions also express other sound reasons why the "* * * property in question must have an English character, * * * stamped upon it, * * *." 1 Queen's Bench, pages 136, 137.

If all of the states would apply the law of the domicile to the question at hand then, of course, uniformity would follow. But, as we have learned, uniformity of

decision does not exist. So long as divergent views do prevail it would seem that an Oregon resident, who desires to create a plan for the entire disposal of his estate, would feel greater certainity of result if he knew that Oregon law would govern.

We conclude that by any test suggested by the authorities for solving the conflict question presented in this case (save the mentioned argument of Professor Scoles) Oregon law should control. We have found nothing that convinces that the traditional rule is any less appropriate here than in any other question that might confront this trust estate. This, of course, requires that we decide the apportionment question.

■ A brief historical review will help disclose the course by which the older doctrine of equitable apportionment was transposed into the area of federal estate taxation.

Since 1916, the federal estate tax "* * * [was] made a charge upon the estate, and [was] to be paid out of it by the executor substantially as other taxes and charges are paid.*" (Footnote omitted). 1 Paul, Federal Estate & Gift Taxation, 1942, § 13.16, page 711. No one quarrels with that statement of the obligation for the initial payment of the tax. Except for certain specific requirements, not pertinent here, the federal statutes have been silent as to any responsibility for contribution to the payment of the tax by those who actually receive the property which is includable in the total property valued for estate tax purposes. The question is: should the court, in the absence of state or federal statute, require an equitable apportionment of the burden of the tax amongst those takers of the property subject to the tax? The question just stated would include the liability for contribution

from those who take by will, intestacy or by any other taxable transfer activated by the death of the person whose estate is subject to the federal tax. In the instant case, of course, our answer to the question is limited to the inter vivos trust at hand. Obviously, this trust estate was not otherwise subject to probate administration.

The authorities are in substantial agreement that prior to 1942 it was thought that the federal statutes which imposed the estate tax had "* * * preempted the field and that it was not open to the State courts to create other or different exceptions." Fleming, Apportionment of Federal Estate Taxes, 1948, 43 Ill L Rev 153, 155. This prevailing thinking caused the state courts to create a general rule that apportionment would not be allowed except when the will or other dispositive document expressly required it.① See Annotation, 117 ALR 1191; *Matter of Del Drago,* 1941, 287 NY 61, 38 NE2d 131. The New York Court of Appeals, in Del Drago, held a New York apportion-

---

① Section 208 of the Revenue Act of 1916, and later re-enactments in similar form, was the federal statute that prompted the state courts and other authorities to yield, almost without dispute, to the idea of federal preemption. But see Hampton's Adm'rs. v. Hampton, 1920, 188 Ky 199, 221 SW 496, 10 ALR 515.

Section 208 stated:

"(b) *Reimbursement out of estate.* If the tax or any part thereof is paid by, or collected out of that part of the estate passing to or in the possession of, any person other than the executor in his capacity as such, such person shall be entitled to reimbursement out of any part of the estate still undistributed or by a just and equitable contribution by the persons whose interest in the estate of the decedent would have been reduced if the tax had been paid before the distribution of the estate or whose interest is subject to equal or prior liability for the payment of taxes, debts, or other charges against the estate, it being the purpose and intent of this subchapter that so far as is practicable and unless otherwise directed by the will of the decedent the tax shall be paid out of the estate before its distribution."

ment statute was repugnant to the federal estate tax statutes and, therefore, violated the federal supremacy imposed by Article VI, Clause 2, of the Federal Constitution. The opinion in *Carpenter v. Carpenter,* 1954, 364 Mo 782, 267 SW2d 632, examines this historical background and explains why the doctrine of equitable apportionment is appropriately applied to these cases.

In 1942, the Supreme Court in *Riggs v. Del Drago,* 317 US 95, 63 S Ct 109, 87 L Ed 106, 142 ALR 1131, reversed the New York Court of Appeals (*Matter of Del Drago,* supra) and held that Congress had not preempted the field. *Del Drago* decided that:

"* * * By that section Congress intended to protect a distributee against bearing a greater burden of the tax than he would have sustained had the tax been carved out of the estate prior to distribution; any doubt that this is the proper construction is removed by the concluding clause of the section specifically stating that it is 'the purpose and intent of this subchapter that so far as is practicable and unless otherwise directed by the will of the decedent the tax shall be paid out of the estate before its distribution.' Section 826(b) does not command that the tax is a non-transferable charge on the residuary estate; to read the phrase 'the tax shall be paid out of the estate' as meaning 'the tax shall be paid out of the *residuary* estate' is to distort the plain language of the section and to create an obvious fallacy. For in some estates there may be no residue or else one too small to satisfy the tax; resort must then be had to state law to determine whether personalty or realty, or general, demonstrative or special legacies abate first. In short, § 826(b), especially when cast in the background of Congressional intent discussed before, simply provides that, if the tax must be collected after distribution, the final impact of the tax shall be the same as though it had first been taken out of

the estate before distribution, thus leaving to state law the determination of where that final impact shall be." 317 US 100, 101.[⊚]

Since that decision several states have adopted apportionment statutes. The National Conference of Commissioners on Uniform State Laws have proposed for adoption a Uniform Estate Tax Apportionment Act, Report of the National Conference of Commissioners on Uniform State Laws, 1958, and, "In jurisdictions which have passed upon the question for the first time since 1942,* it is generally held that the burden of estate taxes must ultimately be borne by every part of the taxable estate and that every beneficiary must pay a pro rata share of the tax." (Footnote omitted.) Annotation 37 ALR2d 171.

The genesis of the immediate problem is like that described by Scoles, supra, 55 Col L Rev 261, 279:

"The fact that most judicial adoption of apportionment has occurred in cases involving inter vivos transfers* is not surprising, for the appeal of apportionment of estate taxes is probably greater in this area than in any other. In the typical situation, the testator has made gratuitous inter vivos transfers, direct or in trust, and then overlooked the fact that these transfers, while complete by traditional property concepts, are nevertheless subject to taxation as part of his estate at death. Consequently, what may have appeared to him to be a substantial residue will be depleted to the extent of the tax on the inter vivos transfers; the entire testamentary scheme may even be defeated. In concluding that inter vivos transfers should bear their proportionate share of the estate taxes, the courts and legislatures have been strongly influenced by the possibility of this unforeseen distor-

---

[⊚] Section 826(b) mentioned in the quote is the same reference as the statute in footnote 1.

tion of the testamentary scheme.*" (Footnotes omitted).

The trend of the courts and the legislatures to adopt rules of apportionment is understandable. The devolution of property at the incidence of death is increasingly accomplished by devices other than by will or by intestacy. If apportionment is not required these devices can place an unconscionable burden upon that part of an estate subject to probate. There is no persuadable reason to invariably compel a residuary legatee or the heirs of an intestate to bear the entire burden of federal estate taxation when, as in this case, clear indicia of intent is lacking and it appears that the tax consequences are accidental. The cases that, since 1942, have adopted the apportionment rule are predicated upon reasoning that induces adherence. See for example, *Carpenter v. Carpenter,* supra, 364 Mo 782; *McDougall v. Bank,* 1952, 157 Ohio 45, 104 NE2d 441; *Trimble v. Hatcher's Ex'rs.* 1943, 295 Ky 178, 173 SW2d 985. 1 Paul, Federal Estate and Gift Taxation, 1942, § 13.54, written prior to the decision in the *Del Drago* case, (supra, 317 US 95), recognized the inherent equity of requiring beneficiary contribution to the payment of the tax.

We hold that the defendant trustees shall pay the pro rata portion of the estate tax attributable to the addition of the value of the trust estate to the total value of the taxable estate. It will be necessary for the trial court to determine that amount.

The case presents another issue that must be decided.

■ The supplemental trust agreement executed in 1955 by the donors and the original trustee provided that:

"(8) Any federal or state gift taxes arising

from the above three conveyances shall be paid by the Trustees."

In addition to that clause in the written trust document there are in evidence letters written by the original trustee, shortly after the original deeds of trust were executed, in which he assured the donor that the gift taxes would be paid by the Equitable Savings & Loan Association. However, no gift tax returns were filed until after Mr. Berry's death. Hence, penalties and attorneys' fees were incurred when the returns were filed and the amount of the tax settled with the federal internal revenue agents.

The trial court held that even though the trustee was obligated to pay the amount of the tax it had been the duty of Berry to file the return. The court, accordingly, held that the trust could not be charged with the penalties and attorneys' fees. We disagree. We think that the assurances given to Mr. Berry in respect to the gift taxes could have caused him to believe that either Equitable or the trustee would have ascertained the amount of and paid any gift tax liability incurred. We think the trustee should reimburse the administrator for the costs and attorneys' fees.

The case is remanded to the trial court to determine the total amount now due plaintiff and to enter judgment accordingly.

Neither party shall be allowed costs.

Reversed.

### ON REHEARING

John H. Buttler, William E. Love, and Cake, Jaure-

guy, Hardy, Buttler & McEwen, Portland, for the petitioners.

No appearance contra.

O'CONNELL, J., dissenting.

I do not join with the majority in denying the petition for rehearing. The brief in support of the petition for rehearing makes it appear to me that our original opinion was wrong and that we should have applied the law of Washington, the state of the decedent's domicile.

The law of the situs of real property should be applied in deciding questions relating to such property. But the question present in the instant case does not directly relate to the real property in Oregon; the question here relates only to the manner in which the federal tax is to be imposed upon the beneficiaries of the trust.

I believe that the apportionment rule is preferable to that which imposes the tax on the residuary beneficiaries. But I think that it is more important to have a unitary rule which applies to all of the assets of the trust. The only way this can be accomplished is to apply the law of the domicile. There are other reasons pointed out in petitioner's brief and in the article by Scoles, Apportionment of Federal Estate Taxes and Conflict of Laws, 55 Colum L Rev 261 (1955) cited in the original opinion which further support the choice of the law of the domiciliary state. I would grant the petition.

Rossman, J., joins in this opinion.