In the Matter of the Estate of ALICE G. VANDERBILT, Deceased.

GERTRUDE V. WHITNEY et al., as Executors of ALICE G. VANDERBILT, Deceased, et al., Appellants.

STATE TAX COMMISSION et al., Respondents.

Argued February 27, 1939; decided July 11, 1939.

*Arthur A. Ballantine, Roy C. Gasser, Thomas B. Gilchrist, Horace R. Lamb* and *Leo Gottlieb* for Gertrude V. Whitney et al., as executors, et al., appellants.

*Thomas B. Gilchrist* and *Hampton D. Ewing, Jr.*, for Thomas B. Gilchrist, as general guardian of the property of Gloria L. M. Vanderbilt, an infant, appellant.

*Mortimer M. Kassell* and *Harry T. O'Brien, Jr.*, for State Tax Commission, respondent.

LEHMAN, J.   Alice G. Vanderbilt died on April 22, 1934. Her "gross estate" was appraised at $10,120,907.17. Deductions of $766,319.32, allowed by statute, left a "net estate" of $9,354,587.85.   A transfer tax measured by that "net estate" has been assessed.   The decedent was the widow of Cornelius Vanderbilt, who died in September, 1899.   By his will Cornelius Vanderbilt created a fund to provide an income of $250,000 to his wife during her life-time.   He directed that at the death of his wife "the principal set apart  *  *  *  to create the annual payment of two hundred and fifty thousand dollars to my wife, shall be given to our children, Gertrude, Alfred G., Reginald C. and Gladys Moore; and if any then be dead, to their issue, in such proportions and amounts as my said wife may direct or appoint in her last Will and Testament, and in default of such appointment the same shall be

divided among our said four children equally, share and share alike, the issue of any such child or children to take its parent's share, *per stirpes* and not *per capita.*" The decedent Mrs. Vanderbilt exercised the power of appointment conferred upon her. At her death the fund which was subject to that power was appraised at $5,935,572.07, and the full amount was included in the decedent's taxable estate by the tax appraiser. This, the appellants contend, was error.

By the exercise of her power of appointment the decedent gave to one daughter and the issue of a deceased son far more than they would otherwise have received under the will of Cornelius Vanderbilt, thus correspondingly reducing the amount which the other daughter and the issue of the other son would have received if she had failed to exercise her power. The legatees, who received less through the exercise of the power than they would otherwise have received, have asserted a right to elect to take under the will of the creator of the power. The Surrogate has sustained their right to such election and the State does not challenge that ruling. Their legacies, then, are taxable, if at all, as part of the estate of Cornelius Vanderbilt, the donor of the power, and the amounts which they have received have been eliminated from the gross estate of Mrs. Vanderbilt, the donee of the power. (Cf. *Matter of Duryea,* 277 N. Y. 310.) Upon this appeal the question is whether the shares of the trust fund passing to the other daughter and grandchildren in accordance with the exercise of the power of appointment by the donee of the power were properly included in the gross estate of Mrs. Vanderbilt, subject to tax as part of her estate. The shares so included constitute the major portion of the trust fund and more than half of the estate of Mrs. Vanderbilt, the donee of the power.

The property which was included in Mrs. Vanderbilt's estate did not at any time belong to her. It did not at her death pass *from* her to those whom she appointed to take. Her power of appointment was not general. By its exer-

cise she could obtain no benefit for herself, her creditors or her estate. During her life the fund was held by trustees under the terms of the will of Cornelius Vanderbilt. She enjoyed under his will a life interest in the fund, and a tax measured by the value of that life interest was paid upon the death of Cornelius Vanderbilt. The remainder, which would vest in others upon her death, was not included in the tax assessed upon the transfer of his property. Mrs. Vanderbilt might, by exercise of her power of appointment, determine the shares which members of a limited group, defined by the will of Cornelius Vanderbilt, should receive out of property in the estate of Cornelius Vanderbilt and held by trustees under his will. When she exercised that power she gave her appointees nothing which belonged to her and she relinquished no rights which she might have asserted for herself. Nevertheless, the transfer of that property has been taxed in her estate and not in the estate of Cornelius Vanderbilt. The tax so imposed is many times greater than it would have been if the transfer had been taxed in the estate of the donor of the power. The appellants maintain that the Tax Law (Cons. Laws, ch. 60), properly construed, does not authorize the inclusion in the taxable estate of Mrs. Vanderbilt of property which was in no real sense a part of her estate, and that the Legislature could not authorize its inclusion without violation of restrictions placed by the Constitution of the United States upon the legislative power. The questions raised require a detailed statement and analysis of the history of the statutes of the State imposing death duties and of the proceedings had in fixing the tax upon the estate of Cornelius Vanderbilt in accordance with the statute in effect at his death.

The Tax Law then in effect (Laws of 1896, ch. 908, as amd. by Laws of 1897, ch. 284) provided that " a tax shall be and is hereby imposed upon the transfer of any property * * * in the following cases:

" 1. When the transfer is by will or by the intestate laws of this state from any person dying seized or possessed of the property while a resident of the state. * * *

"5. Whenever any person or corporation shall exercise a power of appointment derived from any disposition of property made either before or after the passage of this act, such appointment when made shall be deemed a transfer taxable under the provisions of this act in the same manner as though the property to which such appointment relates belonged absolutely to the donee of such power and had been bequeathed or devised by such donee by will; and whenever any person or corporation possessing such a power of appointment so derived shall omit or fail to exercise the same within the time provided therefor, in whole or in part, a transfer taxable under the provisions of this act shall be deemed to take place to the extent of such omissions or failure, in the same manner as though the persons or corporations thereby becoming entitled to the possession or enjoyment of the property to which such power related had succeeded thereto by a will of the donee of the power failing to exercise such power, taking effect at the time of such omission or failure." (§ 220, subds. 1 and 5.)

We are concerned primarily with those provisions of the statute which might apply to taxation of transfers of property effected through the exercise of a power of appointment by the donee of the power. We are not concerned with those provisions of the statute which might apply where there has been failure to exercise such a power.

Thus when the tax was assessed on the estate of Cornelius Vanderbilt, though the life estate passing under the testator's will to his wife was at that time subject to a tax as part of his estate, the transfer of the fund at the death of his wife, either by her exercise of the power of appointment conferred upon her or, upon her failure to exercise that power, in accordance with the terms of the will of the donor of the power was declared by the statute to be taxable only at the date of the death of the donee of the power " in the same manner as though the property * * * belonged absolutely to the donee of such power and had been bequeathed or devised by such donee by will." The statute, it is clear, is not intended to draw any distinction

between general powers of appointment and special or non-beneficial powers. It applies to every form of power. It was so construed and applied in assessing the tax upon the transfer of the estate of Cornelius Vanderbilt and we are not referred to any case in which any other construction was urged " where there is an absolute gift of a power of appointment." (Cf. *Matter of Burgess*, 204 N. Y. 265, 270.) Such an absolute gift of a power of appointment was made here. Even though choice by the donee of the power was limited to a small group of persons and there may have been a theoretical possibility that none of that group would be in existence at the time fixed for the exercise of that power, yet under all possible circumstances the property was " certain to pass under the exercise or non-exercise of the power of appointment," and, therefore, the transfer was taxable in the estate of the donee. That would not be true where the gift of the power is to take effect only in contingencies which might never arise. In that respect this case differs from *Matter of Burgess* (*supra*), where the testator himself chose the persons to whom remainders should pass in certain contingencies, and conferred a power of appointment upon his trustees only if those contingencies did not arise. The property affected by the power contingently given was in that case included in the taxable estate of the donor of the power, for otherwise, if the contingency upon which the gift of the power was to become effective should not arise, the transfer would not, under the statute, have been subject to any tax.

It should perhaps be added that until 1930 there was little, if any, reason based on any practical consideration why there should be differentiation between general powers of appointment and limited or non-beneficial powers. All transfers of the property of residents of the State by will or by the intestate laws were to be taxed. Transfers effected directly by the will of the resident owner were, of course, to be taxed in the estate of the testator; transfers effected by exercise of a power of appointment conferred by such will were to be taxed as if the property had belonged

to the donee of the power. The rate of taxation was not then measured by the size of the decedent's estate and would not be affected by the provision of the statute that a transfer of that property by the exercise of a power of appointment should be taxed as part of the estate of the donee of the power rather than of the donor. That provision was, then, hardly more than a new and convenient rule of administration. Under earlier statutes, taxing transfers by decedents, this court had held that " where the donee of the power has the right of selection, the interest appointed vests in the appointee at the time of the appointment, but his title relates to and is acquired under the instrument creating the power," and is taxable as part of the estate of the donor. (*Matter of Stewart*, 131 N. Y. 274, 281.) Even then, it was necessary to postpone assessment and collection of the tax until the death of the donee, for under the earlier statutes it was held, too, that contingent remainders, or remainders which, though technically vested, were defeasible, could not be taxed until they vested indefeasibly. (*Matter of Curtis*, 142 N. Y. 219; *Matter of Burgess, supra.*) By taxing transfers of property effected through exercise of a power of appointment as if the property had belonged to the donee of the power rather than to the donor, the tax procedure was simplified, and at times the administration of the estate of the donor could be closed earlier than would otherwise have been possible.

The Tax Law was further amended by chapter 76 of the Laws of 1899 so as to provide: " When property is transferred in trust or otherwise, and the rights, interest or estates of the transferees are dependent upon contingencies or conditions 'whereby they may be wholly or in part created, defeated, extended or abridged, a tax shall be imposed upon said transfer at the highest rate which, on the happening of any of the said contingencies or conditions, would be possible under the provisions of this article." (§ 230.) In accordance with these provisions, which went into effect a short time before the death of Cornelius Vanderbilt, contingent estates or interests created by his will were taxed

tentatively at the highest possible rate. (*Matter of Vanderbilt*, 172 N. Y. 69.) Such contingent estates then taxable did not, however, include any estate or interest in the trust fund to which Mrs. Vanderbilt's power of appointment related, for in construing the statute this court had held that " it is the exercise of the power   *   *   *   which effects the transfer which the statute makes taxable," and that section had no application in such case. (*Matter of Howe*, 86 App. Div. 286, 288; affd. on opinion below, 176 N. Y. 570.)

The State regulates succession to a decedent's property. It permits an owner to provide by will to whom his property shall be transferred upon his death. He may appoint the person to whom the property shall go or he may give to another a power of appointment to be exercised at some future time. If the donee of the power is given a life interest in the property and a general power of appointment which he may exercise for his own benefit, his rights of enjoyment and control are closely analogous to the rights of an owner. Even then, however, it remains theoretically true that the property does not become his and by exercise of the power of appointment he transfers to the appointee a title which relates back to the instrument creating the power.

The statutory rule ignores all such theoretical considerations when it requires that a transfer effected through exercise of the power of appointment shall be taxed " in the same manner as though the property to which such appointment relates belonged absolutely to the donee of such power and had been bequeathed or devised by such donee by will." The statutory rule was, nevertheless, based soundly upon practical considerations which the Legislature decided should control. " Whatever be the technical source of title of a grantee under a power of appointment, it cannot be denied that in reality and substance it is the execution of the power that gives to the grantee the property passing under it." (*Matter of Dows*, 167 N. Y. 227, 231; affd. *sub nom., Orr* v. *Gilman*, 183 U. S. 278.) For that reason this court held that a tax may be imposed upon

a transfer effected through exercise of the power, and that is true though " there was no statute imposing a succession tax of any kind in force when the original disposition of the property was made and the power was created. That transfer is not taxed, and the statute makes no effort to reach it. It is the practical transfer through the exercise of the power by will that is taxed and nothing else." (*Matter of Delano*, 176 N. Y. 486, 494.) In affirming that decision the Supreme Court of the United States pointed out that: " It may be that the donee had no interest in the estate as owner, but it took her act of appointment to finally transfer the estate to some of the class and take it from others. Notwithstanding the common-law rule that estates created by the execution of a power take effect as if created by the original deed, for some purposes the execution of the power is considered the source of title." (*Chanler* v. *Kelsey*, 205 U. S. 466, 474.) The statutory rule treating the execution of the power as the real source of title is, therefore, not arbitrary; at least, so long as the tax is not measured by the size of the estate of the person who makes the transfer. Mere postponement of the assessment of the tax is not a ground for complaint to the court. That is true even though the rate of taxation might be changed in the interval between the death of the donor of the power and the death of the donee or even though in the interval the tax laws were so amended that transfers previously not taxable were subjected to a tax. (*Matter of Dows, supra.*) Indeed, the appellants do not claim invalidity of the statutory rule on such ground; they claim it is invalid as applied in this case on grounds which we shall hereafter consider.

We point out here, again, that we are concerned only with a transfer effected by the exercise of a power of appointment, not with any transfer upon failure to exercise such power. A statutory rule that whenever the donee of a power shall omit or fail to exercise it, a transfer shall be deemed to take place as though the persons becoming entitled to the possession or enjoyment of the property to which such power related had succeeded thereto by a will of the donee of the power taking effect at the time of such

omission or failure, is without any foundation either in fact or in theory. In such case the donee of the power transfers nothing to the person who succeeds to the property of the donor of the power in accordance with the will of the donor or the intestacy laws in effect at his death. Therefore, this court held that the part of the statute was invalid which purported to tax in that manner succession to property through failure to exercise a power. (*Matter of Lansing*, 182 N. Y. 238.) That decision did not affect the provisions of the Tax Law for the taxation of transfers through exercise of the power. To conform to that decision the Legislature then amended section 220 of the Tax Law by omitting the provision for the taxation of transfers upon failure to exercise a power of appointment but left intact the provision for taxation of transfers effected through exercise of a power. (Laws 1911, ch. 732.) That provision is still part of the Tax Law (§ 220, subd. 4), though no longer applicable to persons dying on or after September 1, 1930.

It thus appears plain that the transfer of the fund, created by the will of Cornelius Vanderbilt, to provide an income for his wife during her lifetime, which took effect at her death, was not subject to a death tax in the estate of Cornelius Vanderbilt, because at the time of his death the statute provided that the tax on such a transfer, effected by exercise of a power of appointment, should be imposed in the estate of the donee of the power. It would have been imposed in the estate of Mrs. Vanderbilt, the donee of the power, if she had died before September, 1930, and no effective challenge could have been made to a tax so imposed. Prior to her death, however, the Legislature, by chapter 710 of the Laws of 1930, added article 10-C to the Tax Law, which substituted, in respect to persons dying after it took effect, an estate tax, similar to the Federal estate tax, in place of the tax imposed by the earlier statute, which we have described as an inheritance tax (*Matter of Cregan*, 275 N. Y. 337). That involves, it has been said, a " distinction between a tax on the interest to which some person succeeds on a death and a tax on the interest which

ceased by reason of the death." (*Knowlton* v. *Moore*, 178 U. S. 41, at p. 77.) The older inheritance tax might be described as a tax on the privilege of receiving property on the death of another, and the new estate tax as a tax on the privilege of transmitting property upon death. (*Coolidge* v. *Long*, 282 U. S. 582.) These differences are not merely theoretical. They may carry practical consequences. The rate of the older inheritance tax was measured by the size of the interest received by the individual; the rate of the estate tax is measured by the size of the estate left by the decedent passing to few or many in accordance with the decedent's will or the intestacy laws. An *inheritance* tax, measured by the size of the interest *received* by an individual through the exercise of a power of appointment, though imposed in the estate of the donee of the power as if the transfer had been made by the donee of the property owned by him, produces no arbitrary inequality even where the power of appointment is a non-beneficial power and refers to property never owned by the donee. An estate tax measured by the size of the estate *transmitted* to others upon the owner's death might, however, produce unjust inequality if the law arbitrarily includes for such purpose any property which is in no real sense a part of the estate in which it is taxed. Accordingly, though the earlier " inheritance tax " statutes made no distinction between transfers effected through exercise of a general power of appointment and transfers effected through exercise of a limited or non-beneficial power, the statute of 1930 modelled upon the Federal estate tax laws incorporated a distinction previously drawn in the Federal statutes between transfers made through the exercise of " general " powers of appointment and transfers through the exercise of limited powers. It provided that the value of the gross estate of a decedent subject to the tax shall include the value of " any property passing under a *general* power of appointment exercised by the decedent." (§ 249-r, subd. 7.) The value of property passing under a *limited* power of appointment would thereafter be included in the value of the estate, subject to tax, of the donor of the power.

That left a gap in the Tax Law, through which a transfer effected thereafter by exercise of a limited power of appointment created by will of a testator dying before the statute took effect would escape all taxation. To fill in that gap the Legislature, by chapter 320 of the Laws of 1932, added subdivision 7-a to section 249-r to provide that the value of the gross estate of a person dying thereafter should include the value of all property " passing under a power of appointment exercised by the decedent (a) by will, or (b) by deed * * * intended to take effect in possession or enjoyment at or after, his death, * * * provided that the transfer of such property is not or was not subject to a death tax in the estate of the grantor of such power but would have been so taxable except for a statute providing that the tax on the transfer of such property should be imposed in the estate of the grantee of such power in the event of the exercise thereof."

It is plain that the purpose of the new subdivision was to restore the old rule that a transfer of property under a limited power of appointment exercised by a decedent should be taxed in the estate of the grantee of the power, in the small class of cases where otherwise the transfer would escape taxation. In those cases, the rule formulated in respect to an inheritance tax is to be applied now to an estate tax where the rate is measured by the size of the estate of the grantee of the power; and we are told that where, as in this case, the grantee did not own the property and the power of appointment could not be exercised by the grantee for his own benefit, such a tax produces a result so arbitrary and unjust that it would violate the provisions of the Fourteenth Amendment of the Federal Constitution. At least, it is said, the validity of such a tax would be so doubtful that the statute should be construed in manner which would avoid the doubt.

We are urged for that reason to limit the words " property passing under a power of appointment " to property in which the decedent had or could acquire a beneficial interest, and for analogy and precedent we are referred to a series of cases in the Federal court exemplified by *Helvering* v.

*Parker* (84 Fed. Rep. [2d] 838), where the courts have held that the Federal Estate Tax Law (§ 302-g; U. S. Code, tit. 26, § 411, subd. [g]), requiring the inclusion, in a decedent's taxable estate, of the proceeds of life insurance policies " taken out by the decedent upon his own life " did not apply where the insured reserved no right to surrender and cancel the policies, to pledge them for loans or to dispose of their proceeds for his own benefit during his life and no other beneficial right incidental to ownership or control. (Cf., also, *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339; *Helvering* v. *Helmholtz*, 296 U. S. 93; *White* v. *Poor*, 296 U. S. 98.)

" A statute must be construed, *if fairly possible*, so as to avoid not only the conclusion that it is unconstitutional but also grave doubts upon that score." (*United States* v. *Jin Fuey Moy*, 241 U. S. 394, 401; cf. *Knowlton* v. *Moore*, *supra*, at p. 77.) Tax statutes " *in case of doubt*   *   *   * are construed most strongly against the Government, and in favor of the citizen." (*Gould* v. *Gould*, 245 U. S. 151, 153.) (Italics in both cases are ours.) Here, however, the purpose of the statute is clearly expressed and the construction urged upon us is not " *fairly possible.*" The original statute made no distinction between beneficial or general power and limited or non-beneficial powers. The new statute does make the distinction between " general " powers and other powers, but it is clear that a transfer under any power of appointment, not general, which was taxable under the old statute in the estate of the donee of the power is intended to be so taxable also under subdivision 7-a of section 249-r. We cannot give to the statute a more limited application. If the subdivision does not apply in this case the passing of title to this property will escape taxation. That was not the legislative intent.

The serious question in this case is whether the tax violates the Constitution of the United States. The State has a broad power of taxation, but in the exercise of that power it may not provide a measure for a tax which is entirely arbitrary and which produces inequality and injustice so great as to deprive a taxpayer of the equal protection of the

law. So it has been held that " a statute which imposes a tax upon an assumption of fact which the taxpayer is forbidden to controvert, is so arbitrary and unreasonable that it cannot stand under the Fourteenth Amendment." (*Heiner* v. *Donnan*, 285 U. S. 312, 325.) Taxation, it has often been pointed out, is an intensely practical matter. The Legislature may not arbitrarily fix the measure of a tax by a fiction. (*Hoeper* v. *Tax Commission*, 284 U. S. 206.) Always there must be some reason based on fact, not fiction, for imposing a particular tax upon a particular class, and absence of any basis for the classification may not be hidden by an arbitrary creation of a conclusive presumption. (*Schlesinger* v. *Wisconsin*, 270 U. S. 230.) The Supreme Court has authoritatively stated the rule which in such cases creates invalidity: " a statute which imposes a tax upon an assumption of fact which the taxpayer is forbidden to controvert, is so arbitrary and unreasonable that it cannot stand under the Fourteenth Amendment." A statutory rule is beyond the power of the Legislature if the result would be " that upon those who succeed to the decedent's estate there is imposed the burden of a tax, measured in fact by property which comprises no portion of the estate, to which the estate is in no way related, and from which the estate derives no benefit of any description." (*Heiner* v. *Donnan, supra,* p. 327; cf. *Nichols* v. *Coolidge,* 274 U. S. 531; *Frew* v. *Bowers,* 12 Fed. Rep. [2d] 625.)

The standard of what is arbitrary and unreasonable is not rigid. As we have often pointed out, the question is usually one of degree. A difference in the facts, seemingly slight; an emphasis on one factor rather than another, may produce varying results. Even in the cases cited there was division of opinion in the court, though the difference of opinion concerned only the application of the general rule. The rules are too well established to be challenged. The facts present in this case are so different from those presented in the cited cases that they furnish, at best, imperfect analogies.

In considering the validity of the tax three factors must constantly be kept in mind: the nature of the tax, the

measure of the tax and its incidence. Perhaps repetition is unnecessary, but we again point out that the statute in effect at the death of Cornelius Vanderbilt imposed no tax upon an inchoate transfer of a decedent's property to be effected thereafter by exercise of a power of appointment. Under that statute and under the present statute " it is the practical transfer through the exercise of the power by will that is taxed and nothing else." (*Matter of Delano, supra*, p. 494.) In 1932, when the Legislature enacted subdivision 7-a of section 249-r, the " practical transfer " had not been made. The Legislature was free at that time to impose a tax upon such transfer by a decedent dying thereafter, even if the earlier tax statute had imposed no such tax. (*Chanler v. Kelsey, supra.*) The Legislature chose to lay an " estate " tax measured by the aggregate of the property which was in a *practical* sense transferred by the will of the grantee of the power. Though the tax is paid out of the estate of the decedent, the Decedent Estate Law (Cons. Laws, ch. 13) provides that the tax so paid " shall be equitably prorated among the persons interested in the estate to whom such property is or may be transferred or to whom any benefit accrues." (§ 124.) We may, therefore, properly assume that Mrs. Vanderbilt's appointees will ultimately bear the main burden of the tax in proportion to the property received.

Since an estate tax is an excise laid in respect to the privilege of transmitting property rights at death (*Coolidge v. Long, supra*), it can hardly be said that the statutory rule that the rate of the tax should be measured by the aggregate of the property so transmitted is entirely without basis in fact, even though the decedent did not own some of the property but merely had a limited power of appointment. In the cases cited by the appellants property was included in the aggregate which measured the tax, though it was not transmitted to others at the death by the decedent. In those cases death did not result " in a shifting, or in the completion of a shifting * * * of any economic benefit of property, which is the subject of a death tax." (*Heiner v. Donnan, supra*, p. 323.) There, by arbitrary choice to

include in the " estate " of the decedent property which did not pass at the decedent's death, to which the estate was in no way related and from which the estate derived no benefit, the Legislature increased the rate of taxation upon the transfer of property which the decedent owned and transmitted. In the case we are now considering, no property is included in the aggregate, which measured the tax, which does not pass at Mrs. Vanderbilt's death to persons who take the property only because she so provided in her will. True, the inclusion of that property in Mrs. Vanderbilt's estate increases the rate of the tax which must be paid ultimately by those to whom the property *owned* by Mrs. Vanderbilt was transferred, as well as the tax which must be paid ultimately by those who receive property over which she had a limited power of appointment. Argument may be made that such a tax is not fair; indeed, the fact that under the Federal statute only a transfer of property under a general power of appointment is taxed in the estate of the grantee of the power indicates that Congress believed that it is fairer, as a general rule, that transfer under limited powers should be taxed in the estate of the grantor of the power. Such " unfairness " does not, however, render the statute invalid.

The ultimate burden of an estate tax rests upon the persons to whom the estate is transferred. Since the tax is measured by the total transferred to one or many, each pays a tax measured, not by the benefit he receives, but in some degree by the benefit others receive. Argument might be made that all estate taxes are to that extent unfair, but estate taxes are not open to challenge on such ground. The question is always whether the classification is reasonable; incidental hardship resulting from a reasonable classification is no ground of attack. If an estate tax upon the transfer through the exercise of the power of appointment by Mrs. Vanderbilt were imposed *now* in the estate of Cornelius Vanderbilt in accordance with provisions of article 10-C, perhaps the tax would be as large as if imposed in the estate of Mrs. Vanderbilt. The great disparity in the amount of the tax imposed in the estate of Mrs. Vander-

bilt and the amount of the tax if imposed in the estate of Cornelius Vanderbilt is due to the fact that a tax in the estate of Cornelius Vanderbilt would be measured in accordance with the statute in effect at his death, though, as we have pointed out, the tax is upon the transfer effected by Mrs. Vanderbilt's will and should be taxed in accordance with statutes in force at her death. Its inclusion in an estate tax, measured by the aggregate of the property transferred under her will, is not so unreasonable that it may be challenged in the courts.

The classification so made applies only to transfers under a limited power of appointment created by the will of a person dying prior to September 1, 1930. Transfers under such powers created by persons dying thereafter would be subject to a tax measured in a different way — and such tax might be higher or lower but would not be the same. That, it is said, denies to the taxpayer the equal protection of the law. In urging that contention the appellants lean heavily on the case of *Binney* v. *Long* (299 U. S. 280). In that case the Legislature based discrimination upon whether a transfer was made before or after a date which it arbitrarily chose. In the instant case the discrimination is not based upon a date arbitrarily selected but is a logical solution by the Legislature of a problem which it was required to meet. The discrimination, as we have already said, is between a transfer under a limited power of appointment theretofore granted and a transfer under such a power thereafter granted, and it was calculated to prevent transfers thereafter effected under powers theretofore granted from escaping all taxation. That is not an arbitrary discrimination.

Other objections raised by the appellants have been rejected after careful consideration. We do not extend this opinion further by detailed analysis.

The order of the Appellate Division should be affirmed, with costs.

O'BRIEN, HUBBS, LOUGHRAN, FINCH and RIPPEY, JJ., concur; CRANE, Ch. J., taking no part.

Order affirmed.