LOWE, WILL, IN RE: DECEASED.

Probate Court, Cuyahoga County.

No. 147331. Decided November 19, 1962.

*Mr. Edwin D. Williams,* for plaintiff, The Cleveland Trust Company.

*Messrs. Squire, Sanders & Dempsey,* for defendant, The Cleveland Society for the Blind.

*Mr. Seabury H. Ford,* for Defendant Heirs and Next of Kin of Armstead M. Lowe.

*Mr. John D. Barricklow* and *Mr. John M. Connors,* assistant attorneys general, for defendant, the State of Ohio.

ANDREWS, CHIEF REFEREE. This case presents an important and interesting question. Is the otherwise valid exercise of a general testamentary power of appointment in favor of a charitable corporation rendered invalid by reason of the fact that the donor of the power died within a year of the execution of his will, leaving a son?

The question has never been decided in Ohio, and diligent search by counsel and court has failed to disclose a case in point from any other jurisdiction in the United States, though there is always the chance that such a case may be lurking somewhere.

The action arises from an application by The Cleveland Trust Company as trustee under the will of Armstead M. Lowe, asking the court to order distribution of the property remaining in the trust estate to The Cleveland Society for the Blind, after

making provision for the costs of administration, including trustee's fees, court costs, and attorney fees.

The essential facts are simple and undisputed.

Armstead M. Lowe executed his will on January 28, 1922, and died on December 22, 1922, leaving as his next of kin his wife, Eva A. Lowe, and his son, Charles F. Lowe.

By his will, Armstead M. Lowe gave the remainder of his property to The Cleveland Trust Company as trustee.

Item II of the will directed that upon the death of the life beneficiaries, "such trust fund shall pass to such person or persons as my wife may by last will, executed after my death, designate or appoint * * *"

There was a gift over to a benevolent institution in case the power of appointment was not exercised, but since it was exercised, the gift over need not concern us.

The last surviving life beneficiary died in 1960.

Eva A. Lowe executed her last will on February 13, 1923, and died on March 21, 1923, leaving no issue or adopted children or the lineal descendants of either. She was Armstead Lowe's second wife and was not the mother of Charles F. Lowe, Armstead's only child.

In the exercise of the power of appointment, Eva Lowe, by Item V of her will, designated and appointed The Cleveland Society for the Blind "to take and hold the said residue and remainder of the estate of my said deceased husband," and directed "that the Trustee under his will assign, transfer and convey all such residue and remainder absolutely to the said Cleveland Society for the Blind * * *"

Charles F. Lowe, Armstead's only child, died on May 2, 1952. The living next of kin of Armstead Lowe, consisting of a grandchild and two great-grandchildren, contend that the charitable bequest in Eva Lowe's will to The Cleveland Society for the Blind is invalid by reason of the mortmain statute, and they ask that the application be denied and that the trustee be ordered to make distribution to them.

The statute in force when Armstead Lowe and Eva Lowe died was Section 10504, General Code, the pertinent part of which reads as follows:

If a testator dies leaving issue of his body, or an adopted child, living, or the legal representative of either, and the will

of such testator, gives, devises, or bequeaths the estate of such testator, or any part thereof, to a benevolent, religious, educational, or charitable purpose * * * or to a person in trust for such purposes * * *, whether such trust appears on the face of the instrument making such gift, devise, or bequest or not; such will as to such gift, devise, or bequest, shall be invalid unless it was executed according to law, at least one year prior to the death of the testator.

In 1932 the statute was amended by substituting the words "lineal descendants" for "legal representative," and became Section 10505-4, General Code. Concededly, the change was not significant, and apparently was made merely for purposes of clarification. The statute is now Section 2107.06, Revised Code.

The purpose of this type of statute, commonly referred to as a mortmain statute, is to prevent undue influence, enhanced by the apprehension of approaching death. *Kirkbride* v. *Hickok,* 155 Ohio St., 293, 302, 98 N. E. (2d), 815, 820 (1951). Or, as stated in *Thomas* v. *The Trustees of Ohio State University,* 70 Ohio St., 92, 108, 70 N. E., 896, 898 (1904):

It is therefore apparent that this statute is intended to operate merely as a limitation upon the testator's power of disposition, for the protection of the heir against improvident wills or wills made under undue influence.

Mr. Schwartz, in an excellent article in 13 Western Reserve Law Review, 576 (1962), entitled *The Ohio Mortmain—A Need for Reform,* states it as follows, at page 577:

The reason for restricting gifts by will for charitable purposes in the United States * * * was mainly to protect certain classes of the testator's relatives from being excluded from his will by improvident gifts made to charitable institutions while under the apprehension of impending death.

See also Atkinson, *Wills* 136 (2d ed., 1953).

Oddly enough, despite such statements about the purpose of the statute, it is not necessary that there be undue influence or apprehension of death in fact. The statute states plainly that unless the will was executed at least one year prior to the death of the testator, the charitable gifts are invalid provided any of the designated heirs or next of kin survive.

Moreover, there is another queer angle to the statute. Al-

though it appears to exist for the protection of children, adopted children, or the lineal descendants of either, the fact is that under certain conditions its benefits may inure to next of kin completely removed from the designated classes. See *Patton v. Patton,* 39 Ohio St., 590 (1883); *Davis v. Davis,* 62 Ohio St., 411, 57 N. E., 317 (1900); Schwartz, *supra,* page 578.

In any event, it is important to note that the statute does not make the act of giving, devising, or bequeathing to a charity an illegal act, for the gift, devise, or bequest is perfectly valid if the testator lives for a year, or if he dies within a year without leaving a child or adopted child, or their lineal descendants. See *Thomas v. The Trustees of Ohio State University,* 70 Ohio St., 92, 107, 70 N. E., 896, 898 (1904).

Since the mortmain statute is a limitation on the right of testamentary disposition, it must be strictly construed. *Thomas v. The Trustees of Ohio State University,* 70 Ohio St., 92, 108, 70 N. E., 896, 898 (1904); *Ruple v. Hiram College,* 35 Ohio App., 8, 171 N. E., 417 (1930); *Campbell v. Musart Society of Cleveland Museum of Art,* 131 N. E. (2d), 279 (Prob. Ct. 1956); 1 Bowe-Parker: Page on Wills, 106 (1960).

Looking to the statute as applied to Armstead Lowe's will, it is apparent that he did not give, devise, or bequeath any part of his estate to a benevolent, religious, educational, or charitable purpose or to a person in trust for any of such purposes. Thus, even though he died within a year from the making of his will, leaving a son, there is no possible justification for invoking the statute.

In connection with Eva Lowe's will, counsel for the trustee and counsel for The Society for the Blind argue that Section 10504, General Code (now Section 2107.06, Revised Code), does not include the designation of a charity by the donee of a power of appointment. *Thomas v. Trustees of Ohio State University,* 70 Ohio St., 92, 70 N. E., 896 (1904) is cited in support of this position. Upon careful analysis, I do not think that the decision goes that far. The power there given was to ratify and confirm the testator's devise to Ohio State University, and the power was given to his only child, a daughter, who, after her father's death within the year, conveyed the property by deed to the university. In effect, the father's will merely gave to his daughter the "power" to renounce her right to the property

in the event of his death within a year. But this she could have done without any such "power." The case is far removed from one where a testator gives a general testamentary power of appointment and the donee of the power appoints to a charity.

However, as pointed out by counsel, the statute does not contain anything about powers of appointment, and they argue that a court should not expand it to include something which the legislature omitted, especially in view of the decisions, previously cited, that the statute must be strictly construed.

A well-reasoned case in New York adopted this view that the mortmain statute should not be thus extended. *Farmers' Loan and Trust Co.* v. *Shaw,* 107 N. Y. Supp., 337 (Sup. Ct., 1907). The statute prescribed that no person having a husband "shall by * * * her last will * * *, devise or bequeath to any * * * charitable * * * corporation * * * more than one-half part of * * * her estate" and that such devise or bequest "shall be valid to the extent of one-half and no more."

By her last will, a married woman who was the donee of a general testamentary power of appointment under her father's will, designated a charitable corporation as the appointee of all the property under the power. Against the contention of the surviving husband, the court held that the statute did not apply to a power of appointment. The following language of the opinion is illuminating:

The object of this statute undoubtedly is to protect the persons who would be the natural recipients of the bounty of the testators, and would benefit by an intestacy on the part thereof, and hence can have no application to the case of an exercise of a power such as was given to Mary E. Shaw. The mere fact that Mary E. Shaw had this power over the property gave her no estate therein. She was not the owner of the property, and could convey the fee only in the exercise of the power given by the will.

In the present case, this problem need not be solved, because the factual situation obligingly permits a decision without its solution. For even if we assume that powers of appointment are included in the mortmain statute, so that the testamentary designation of a charity as the appointee under the power would be invalid if the donee of the power died within a year of the execution of her will, leaving a child or adopted child, or the

lineal descendants of either, Eva's appointment to The Society for the Blind would not run afoul of the statute, because she did not leave any of the heirs enumerated therein.

In summary, then, we have two valid testamenary gifts, neither coming within the terms of Section 10504, General Code. In the face of this, unless there is something further which requires a contrary decision, I must disagree with the contention of counsel for the next of kin that the charitable bequest in Eva Lowe's will is invalid. But counsel has two more points. I will consider the less complicated point first.

It will be recalled that Item II of Armstead Lowe's will directed that upon the death of the life beneficiaries, "such trust fund shall pass to such person or persons as my wife may by last will, executed after my death, designate or appoint * * *"

Counsel contends that the words of the power limit appointment to natural persons, and therefore do not embrace a charitable corporation. The point was not raised in the briefs and was presented briefly near the close of the oral argument. No authorities were cited for counsel's position.

Counsel's point is not well taken, and I hold that the term "person or persons" includes charitable corporations. Authority is not lacking. In 5 *American Law of Property* section 23.1, p. 461 (1952), it is stated:

If *A* leaves property to such person or persons as *B* shall by will appoint, *B* can appoint to anyone, even his own estate * * *

In *Restatement, Trusts* 2d, section 3, Comment *c* (1959), it is stated:

The term 'person' includes corporations and unincorporated associations.

Section 324 in Volume 3 of the *Restatement of Property* (1940) reads:

The scope of the donee's discretion as to appointees and the time and manner of appointment is unlimited except as the donor effectively manifests an intent to impose limits.

A case exactly in point is *Farmers' Loan and Trust Co.* v. *Shaw*, 107 N. Y. Supp., 337 (Sup. Ct., 1907), where the court held that the phrase "person or persons" is not limited to natural persons, and that the designation of a charitable corporation as appointee under the power comes within the terms

of the power. Accord: *Pembina Mining Co.* v. *Pennsylvania,* 125 U. S., 181, 189 (1888) ("Under the designation of person there is no doubt that a private corporation is included"); *Lawrence's Estate,* 136 Pa., 354 (1890).

Counsel for the next of kin also contends that the relationship between the donor and the donee of a power of appointment is that of principal and agent, and that the exercise of the power by the donee relates back to the time of the execution of the donor's will. On this theory, goes the argument, we must treat the whole affair as though the bequest to the charity was contained in Armstead Lowe's will and was therefore invalid because of his death within a year. Thus we are asked to espouse a fiction which is contrary to fact.

We have done extensive research on this matter of relation back, and to discuss it in full would unduly lengthen this opinion. However, some explanation of the doctrine seems called for.

Without doubt, there are constantly recurring statements in the cases that the instrument exercising the power relates back as if it were a part of the instrument by which the power was created. Simes and Smith, *Future Interests,* Sec. 911 (2d ed., 1956); 3 *Restatement, Property,* Ch., 25, "Introductory Note," p. 1811 (1940); 5 *American Law of Property,* Sec. 23.3 (1952); 5 Bowe-Parker: Page on *Wills* (1962), Sec. 45.1, p. 496, and the cases cited in the footnotes on that page, all of which we have studied, but which, in the interest of conciseness, will not all be cited in this opinion.

However, as stated in 5 *American Law of Property,* Sec. 23.3 (1952), p. 465:

Like most such generalized answers, the 'relation back' doctrine, as applied to the law of powers of appointment, suggests the correct answers to some of the questions and incorrect answers to others.

At page 467 the author points out that the relation back doctrine is *"never a reason for the law of powers."* (Emphasis mine.)

Simes and Smith, *Future Interests,* Sec. 911 (2d ed., 1956), state that "the rule that the instrument exercising the power is to be read into the original instrument creating the power is inaccurate, and is not consistently followed by the courts."

And the "Introductory Note" to Chapter 25, 3 *Restatement, Property*, 1811 (1940), has this to say:

Many of the characteristic rules of the law of powers are accounted for by the conception of a power as a mere authority and its doctrinal corollary of 'relation back'—for example, the rule that married women can exercise a power over types of property which they have no capacity to convey (citation omitted), the rule that the period of perpetuities is computed from the creation of the power with reference to appointments under special powers and general testamentary powers (citation omitted), the rule that the spouse of the donee has no dower in the property (citation omitted). However, the 'relation back' theory has never been consistently followed.

Perhaps the crowning blow to the fictional doctrine of relation back is contained in an article by Simes, who, after a careful analysis of the cases, concludes that the relation back doctrine is neither accurate nor useful. Simes, *The Devolution of Title to Appointed Property*, 22 Illinois Law Review 480 (1928).

In my own reading of the cases, I found that the courts tend to reiterate the doctrine without explaining its significance in solving the particular problem; and, in some cases, indeed, there seems to be little or no connection between the doctrine and the decision. It is true, though, that in many instances the application of the doctrine will bring about a desirable result. For example, in *G. A. C. Halff Foundation* v. *Calvert*, 281 S. W. (2d), 178 (Tex. Civ. App., 1955), the doctrine was used in connection with a special power of appointment in order to create an exemption from an inheritance tax.

But ordinarily the same result would be attainable without reliance upon the fiction. Moreover, a number of the cases depend more on the doctrine that the appointee takes the donor's property than upon the relation back idea.

In Ohio the venerable case of *Wills* v. *Cooper*, 2 Ohio, 124 (1825), contained the following dictum at page 128:

A person in whose favor the power has been executed, takes in the same manner as if the instrument executing the power had been contained in that given in it.

This dictum had nothing whatsoever to do with the issue or the decision.

The dictum was quoted in *In re Post,* 56 Ohio Law Abs., 240, 91 N. E. (2d), 698 (App., 1949), but, as in so many of the cases, the relation back doctrine was a mere appendage to the court's reasoning, and the decision could have been made without reference to it.

Other Ohio cases are too far afield to be considered in this opinion.

From the previous discussion it is evident that there is nothing sacrosanct about the relation back doctrine, and that whether or not to apply it is mainly a matter of policy, common sense, and justice.

One example in which the doctrine has been scrapped is in the case of lapsed legacies at common law. In this regard, I can do no better than to quote Simes and Smith, *Future Interests* sec. 917 (2d ed., 1956).

If the appointee under a power to appoint by will dies before the donee of the power, the decisions are uniform to the effect that he cannot take under the power. Commonly, it is said that the appointment lapses. *If courts followed consistently the doctrine that the exercise of the power is read back into the instrument creating the power, the result would be otherwise.* (Emphasis mine.)

Further discussing the matter of lapsed appointments, at section 984 of their book, Simes and Smith add the following:

It might be argued that the relation back doctrine would enable us to avoid this principle, and that, if the appointee were alive when the power was created, the appointment would be valid. But the courts did not so hold. Obviously the transfer of property by a power of appointment is not really complete until the power is exercised; and the fiction of relating the appointment back to the creation of the power will not make valid an appointment to a deceased person.

An interesting case where, in effect, the relation back doctrine was rejected, is *Commonwealth* v. *Fidelity and Columbia Trust Co.,* 285 Ky., 1, 146 S. W. (2d), 3 (1940). The Kentucky legislature levied an inheritance tax on property transferred by power of appointment. It was argued that since the donor had died twenty-eight years before the statute was enacted, and since the donee is disposing of the property of the donor, not his own property, the legislature had no power to impose such a tax in

this case. The court upheld the tax. Although recognizing the doctrine that when the donee exercises the power of appointment, he is disposing of the donor's property, the court said that the imposition of the tax on the appointees does not make the tax retroactive and does not constitute taxation of the donor's property. Inasmuch as the appointee of the power had no right to possession and enjoyment of the estate until the donee's death, a new right came into existence, and it is this new right which the statute taxes.

Another case in which the legislature imposed an inheritance tax on property over which the donee had a power of appointment, treating such property as part of the donee's gross estate, is *In re Vanderbilt's Estate,* 281 N. Y., 297, 22 N. E. (2d), 379 (1939). Again, the court recognized first that when the donee exercised the power, "she gave her appointees nothing which belonged to her * * *" The court also recognized that, theoretically, by the exercise of the power of appointment, the donee transfers to the appointee a title which relates back to the instrument creating the power. The court then pointed out that the tax statute ignores theoretical considerations and is based upon practical considerations. Continuing, the opinion, quoting with approval from another case, says:

Whatever be the technical source of title of a grantee under a power of appointment, it cannot be denied that in reality and substance it is the execution of the power that gives to the grantee the property passing under it.

The New York statute was upheld as constitutional in *Chanler* v. *Kelsey,* 205 U. S., 466 (1907), the court stating, at page 474:

Notwithstanding the common law rule that estates created by the execution of a power take effect as if created by the original deed, for some purposes the execution of the power is considered the source of the title.

Although the last two cases constitute what may be called a *legislative* modification of the relation back doctrine, they demonstrate how the doctrine may be rejected when policy so requires.

Another case where the relation back doctrine was rejected, this time without the presence of a statute, is *In re Rosenthal's Will,* 283 App. Div., 316, 127 N. Y. S. (2d), 778 (1st Dep't.

1954), aff'd memo, 307 N. Y., 715, 121 N. E. (2d), 539 (1954). There was a provision in the will of the donor of the power of appointment that all legacies, devises, and powers of appointment given to a descendant who married outside the Jewish faith should be cancelled, annulled, and revoked. The will also gave to the testator's grandson a testamentary power of appointment over certain property held in trust. By his own will the grandson exercised the power of appointment in favor of his daughter. The life tenant of the trust property was still alive, but the grandson's daughter contemplated marrying a man named Kelly, who, quite obviously, was not of the Jewish faith. In a will construction case the question was whether the girl's marriage to Kelly would forfeit her right to take as appointee under the power. The trustees contended that the grandson's daughter was really a legatee or devisee under the terms of the will, for which reason marriage to Kelly would cancel, annul, and revoke the gift to her. Apparently their contention was based upon the relation back doctrine. After a discussion of that doctrine, the court said:

The fiction of 'relation back' cannot be stretched to constitute authority for the proposition that in this proceeding petitioner's interest through appointment must be adjudged a legacy or devise.

I think it is clear that this court is free to decide the present case without any restriction arising from the so-called doctrine of relation back. As noted in the early part of this opinion, there appear to be no decisions on the precise point, certainly none in Ohio.

Let us see then what the result would be if we were to apply the relation back fiction. This would mean that we would regard Eva Lowe's exercise of the power of appointment as being part of Armstead Lowe's will. Thus, under the relation back fiction, his will would have contained a gift to a charitable institution, and his death within a year would have rendered the gift invalid.

But this fiction is completely contrary to fact. His will did not contain the gift to The Society for the Blind, so when he died within a year, there was no such gift to be invalidated. And the adoption of the relation back doctrine here would distort the mortmain statute into something which it was never

meant to be. The statute provides that if the testator dies within a year, leaving a child, his bequest to a charity is invalid. But here there was no gift to a charity. If the relation back doctrine were applied under these circumstances, the exercise of a testamentary power of appointment to a charity thiry, forty, or fifty years later would come back over the years to invalidate a perfectly good will. I hold that the relation back doctrine should not and will not be applied in the present case.

Incidentally, an interesting and significant case where another well-known doctrine, adopted in a statute, was rejected because of the particular circumstances is *Estate of Herbert,* 131 Cal. App. (2d), 666, 281 P. (2d), 57 (1955). A California statute provided that the execution of a codicil referring to a previous will has the effect of republishing the will as modified by the codicil. In his will the testator made a bequest to a charitable corporation. Later, he executed a codicil making a certain additional bequest to an individual. The codicil in no way altered or even mentioned the charitable bequest. The testator died within thirty days of the execution of the codicil, but more than thirty days after the execution of the will. The California mortmain statute has a thirty day period rather than Ohio's one year period. The heirs argued that by reason of the statute the will and codicil should be regarded as one instrument executed on the date of the codicil, as a result of which the bequest to the charity was void. The court rejected this argument and upheld the charitable bequest. In the teeth of the literal wording of the republication statute, the court said:

* * * we conclude that the residual bequest to respondent charity * * * was not republished by the codicil * * * The bequest in the original will to respondent charity was executed more than six months prior to testator's death * * * and is valid.

I hold that Eva Lowe's testamentary appointment in favor of The Cleveland Society for the Blind is valid and that the residue and remainder of the trust property, after making provision for the costs of administration, including trustee's fees, court costs, and attorney fees, be distributed to The Cleveland Society for the Blind in accordance therewith.

It is important to note that under Ohio law, with certain exceptions, a person may, in effect, disinherit his children. Whether this is a wise law is not for me to say. I must decide

the case under the law as it is. And it is worthy of note that years ago in an action contesting Armstead Lowe's will, it was found that he was competent and not under undue influence when he made his will.

Conclusions of Law

1. Item V of Eva A. Lowe's will, in which, in the exercise of a general testamentary power of appointment granted to her by Item II of Armstead M. Lowe's will, she designated and appointed The Cleveland Society for the Blind "to take and hold the said residue and remainder of the estate of my said deceased husband," and directed "that the Trustee under his will assign, transfer and convey all such residue and remainder absolutely to the said Cleveland Society for the Blind * * *'' is valid.

2. The Cleveland Trust Company, Trustee under the will of Armstead M. Lowe, is ordered and directed to carry out the aforesaid appointment by distributing to The Cleveland Society for the Blind the property remaining in the trust estate so created under the will of Armstead M. Lowe, after making provision for the costs of administration, including trustee's fees, court costs, and attorney fees.