**Robert S. CALVERT, Comptroller of Public Accounts of the State of Texas et al., Appellants,**

v.

**ZANES–EWALT WAREHOUSE, INC., Appellee.**

No. 12000.

Court of Civil Appeals of Texas, Austin.

March 21, 1973.

Rehearing Denied April 11, 1973.

Crawford C. Martin, Atty. Gen. of Tex., Lewis A. Jones, Asst. Atty. Gen., Austin, for appellants.

H. T. Bowyer, William W. Sweet, Jr., Bowyer, Thomas & Sweet, Dallas, for appellee.

PHILLIPS, Chief Judge.

This is a suit by Zanes-Ewalt Warehouse, Inc., appellee, plaintiff below, against Robert S. Calvert, Comptroller of

Public Accounts,[1] to recover cigarette taxes paid under protest under the provisions of Article 7057b, of the Vernon's Ann.Revised Civil Statutes of Texas and Article 1.05, Chapter 1, Title 122A, Taxation-General, V.A.T.S., in the amount of $27,501.65. The tax was levied upon cigarettes which appellee claimed, and the court found, had been stolen from appellee.

In a trial before the court, the court rendered judgment in favor of appellee, that it recover of the defendants the sum of $27,501.65 together with costs and interest as allowed by law.

We affirm.

The question in this case is the constitutionality of an amendment to the cigarette tax law, Article 7.01(8), Taxation General, effective October 1, 1969, which reads as follows:

> " 'First Sale' shall mean and include the first sale or distribution of cigarettes in intrastate commerce, or the first use or consumption of cigarettes within this state, or the loss of cigarettes in this State whether by negligence, theft, or any other unaccountable loss."

Appellee is a public warehouseman, maintaining a warehouse in the city of Farmers Branch, Dallas County, Texas. It was acting as distributing agent for five out-of-state tobacco manufacturing companies by handling their cigarettes and by delivering them to the tobacco companies' customers in the original packages upon orders from such companies received from outside the State of Texas.

Under the Cigarette Tax Statute, Title 122A, Taxation-General, Article 7.01(16), appellee was a distributing agent and qualified as such by giving the statutory bond. There was no duty imposed upon it to purchase the cigarette tax stamps nor affix them to the packages. That was the duty of the distributor under Article 7.01(13),

the wholesale dealer under Article 7.01(14) or the retail dealer under Article 7.01(15).

The Comptroller, acting under the provisions of the Cigarette Tax Law, made an audit of appellee's accounts with the tobacco companies covering the period from October 1, 1969, through November 30, 1970. He found a shortage of 3,548,600 cigarettes, the tax upon which amounted to $27,501.65, and exacted and collected this tax from appellee on the stolen cigarettes. Appellee never became the owner of the cigarettes but title remained in the respective tobacco companies until the cigarettes were delivered to their customers upon orders from such companies received by appellee from outside the State of Texas. Payment for the cigarettes received from appellee was made by the customers directly to the out-of-state tobacco manufacturing companies.

The trial court made findings of fact and conclusions of law. In its conclusions of law the trial court held, among other things, that the application of Article 7.01(8) under the facts and circumstances of this case is without a reasonable relation to the circumstances, and as such is both arbitrary and unreasonable. The court found further that the statute constitutes a fictitious classification of property for tax purposes in such a manner as to be clearly arbitrary and discriminatory and should be rejected. It was also found that the application of the statute to appellee denies to appellee the equal protection of the law and deprives appellee of its property without due process of law in violation of the 5th and 14th Amendments to the Constitution of the United States (also contra to Article 1, Section 19 and Article III, Section 1 of the Constitution of the State of Texas Vernon's Ann.St.). We affirm the trial court in this holding.

We are well aware of the rule that the courts must uphold tax legislation

1. Other defendants were: Jesse James, Treasurer of State and John Hill, Attorney General (substituted by motion for Crawford C. Martin, formerly Attorney General) were also made defendants.

unless it clearly appears to violate some provision of the Constitution. State v. Wynne, 134 Tex. 455, 133 S.W.2d 951 (1939). However, one of the essential elements of a valid classification is that it must be reasonable and natural, neither capricious nor arbitrary. It must rest on some difference which bears a natural, reasonable and just relation to the act in respect to which the classification is proposed. Davis v. White, 260 S.W. 138 (Tex.Civ.App.1924, writ ref'd).

By making a theft a first sale, the law penalizes the distributing agent who is not the owner of the cigarettes, nor charged with any duty of buying the stamps and affixing them or of paying the tax, and merely imposes this penalty upon him by a legislative fiction. This statutory definition of a first sale,[2] within the whole scheme or pattern of taxes sought to be collected[3] so strains the ordinary meaning of the terms as to render the definition arbitrary and unreasonable to the point of denying due process of law.

While this is a case of first impression in Texas, a similar statute was stricken by the Supreme Court in New Jersey in 1962, Motor Cargo, Inc. v. Division of Tax Appeals, 10 N.J. 580, 92 A.2d 774. Mr. Justice William Brennan, speaking for the Court stated:

"This construction of the statute disposes of the State's contention that the statutory definition that a 'sale' shall include a 'theft,' and the provision that stolen beverages 'shall be deemed to have been sold' within this state, R.S. 54:41–2, N.J.S.A., support the assessments. Indeed,

to interpret the statute as making such definition applicable to these carriers, who were the innocent victims of the thefts, who were not the owners of the goods and had no authority to transfer the property in them, and whose trailers, one still partly loaded, were recovered in the State of New York, would constitute such application of the statute a clear denial to appellants of the equal protection of the laws in violation of the Fourteenth Amendment to the Federal Constitution. The statutory inference, if applied to the carriers in such circumstances is so strained and so utterly without a 'reasonable relation to the circumstances of life as we know them,' Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 1245, 87 L.Ed. 1519 (1943), as to be plainly arbitrary and unreasonable. Such a palpably fictitious measure of the tax must be rejected as clearly arbitrary. See Ring v. Mayor and Council of Borough of North Arlington, 136 N.J.L. 494, 56 A.2d 744 (Sup.Ct.1948), affirmed 1 N.J. 24, 61 A.2d 508 (1948), appeal dismissed 335 U.S. 889, 69 S.Ct. 250, 93 L.Ed. 427 (1948); Lane Distributors, Inc. v. Tilton, 7 N.J. 349, 81 A.2d 786 (1951); In re Vanderbilt's Estate, 281 N.Y. 297, 22 N.E.2d 379 (Ct.App.1939), affirmed Whitney v. State Tax Comm., 309 U.S. 530, 60 S.Ct. 635, 84 L.Ed. 909 (1940)."

Appellant contends that in construing the definition of a sale[4] under tax law our Supreme Court stated: "In imposing the sales tax from which this litigation arises, the Legislature has specifically defined the term 'sale'. This definition is

---

2. In order that there be a sale, the title, or property in the [transferred item] must have been transferred. J. C. Engelman, Inc. v. Sanders Nursery Co., 140 S.W.2d 500 (Tex.Civ.App.1940, writ ref'd); Willingham v. Fidelity & Casualty Co. of New York, 288 S.W.2d 884 (Tex. Civ.App.1956).

3. See this Court's opinion in Daywood v. Calvert, 478 S.W.2d 152 (Tex.Civ.App. 1972, writ ref. n. r. e.).

4. " 'Sale' means and includes any transfer of title or possession, or segregation in contemplation of transfer of title or possession, exchange, barter, lease or rental, conditional or otherwise, in any manner or by any means whatsoever, of tangible personal property for a consideration."

binding on the Courts in an interpretation of this Article." Gifford-Hill and Company v. State, 442 S.W.2d 320 (Tex.1969). It is difficult for us to beleive that *Gifford-Hill* stands for the proposition that the only limitation imposed upon the legislature (where it defines words in conjunction with laws that it passes) is its own imagination. A definition may not be plainly arbitrary and unreasonable.[5] Then too, *Gifford-Hill* is distinguishable from the case at bar. There, the definition of a "sale" is circumscribed by a transfer of property. It is limited to the generally accepted attributes of a "sale". Consequently, it is not repugnant to reasonable connotations surrounding the word. Here a sale and a theft are incompatible. The definition is especially incompatible under the facts before us when applied to one who has neither title to the property nor authority to make any sale whatsoever.

The judgment of the trial court is affirmed.

---

5. Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519.